Aaron Glenn HAYGOOD, Petitioner,

v.

Margarita Garza DE ESCABEDO,
Respondent.

No. 09–0377.

Supreme Court of Texas.

Argued Sept. 16, 2010.

Delivered July 1, 2011.

Rehearing Denied Jan. 27, 2012.

Ronald J. Schaeffer, Law Office of Ronald J. Schaeffer, Lufkin, Peter M. Kelly, Kelly Durham & Pittard LLP, Houston, for Aaron Glen Haygood.

Frank Gerhardt Cawley, Whitehurst & Cawley, L.L.P., Addison, for Margarita Garza.

Levon G. Hovnatanian, Martin Disiere Jefferson & Wisdom LLP, for amicus curiae American Insurance Association.

Warren Szutse Huang, Fulbright & Jaworski L.L.P., Houston, Gregory D. Smith, Ramey and Flock, P.C., Tyler, for amicus curiae National Association of Mutual Insurance Companies.

J. Mitchell Smith, Germer Gertz, L.L.P., Beaumont, for amicus curiae Texas Association of Defence Counsel.

Michael A. Choyke, Wright & Close, LLP, Houston, for amicus curiae Univar USA Inc.

Kirk L. Pittard, Kelly Durham & Pittard, LLP, Dallas, for amicus curiae The Texas Trial Lawyers Association.

Diana L. Faust, Cooper & Scully, P.C., Dallas, for amicus curiae Texas Alliance for Patient Access.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice WAINWRIGHT, Justice GREEN, Justice JOHNSON, Justice WILLETT, and Justice GUZMAN joined.

■ Damages for wrongful personal injury include the reasonable expenses for necessary medical care, but it has become increasingly difficult to determine what expenses are reasonable. Health care providers set charges they maintain are reasonable while agreeing to reimbursement at much lower rates determined by insurers to be reasonable, resulting in great disparities between amounts billed and payments accepted. Section 41.0105 of the Texas Civil Practice and Remedies Code, enacted in 2003 as part of a wide-ranging package of tort-reform measures,[1] provides that "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant."[2] We agree with the court of appeals[3] that this statute limits recovery, and consequently the evidence at trial, to expenses that the provider has a legal right to be paid.

[1]. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 13.08, 2003 Tex. Gen. Laws 847, 889.

[2]. TEX. CIV. PRAC. & REM.CODE § 41.0105.

[3]. 283 S.W.3d 3 (Tex.App.-Tyler 2009).

## I

Aaron Glenn Haygood sued Margarita Garza De Escabedo for injuries he sustained when the car he was driving collided with Escabedo's minivan as she was pulling out of a grocery store parking lot. Haygood's injuries required surgeries on his neck and shoulder. Both were successful, but some impairment remains.

Twelve health care providers billed Haygood a total of $110,069.12, but he was covered by Medicare Part B, which generally "pays no more for ... medical and other health services than the 'reasonable charge' for such service."[4] Criteria for determining reasonable charges include customary charges for similar services and prevailing charges in the same locality for similar services.[5] Federal law prohibits health care providers who agree to treat Medicare patients from charging more than Medicare has determined to be reasonable.[6] Accordingly Haygood's health care providers adjusted their bills with credits of $82,329.69, leaving a total of $27,739.43. At the time of trial, $13,257.41 had been paid, and $14,482.02 was due.[7]

Invoking section 41.0105, Escabedo moved to exclude evidence of medical expenses other than those paid or owed. Haygood, asserting the collateral source rule, moved to exclude evidence of any amounts other than those billed, and of any adjustments and payments. The trial court denied Escabedo's motion and granted Haygood's. At trial, Haygood offered evidence from each of his health care providers that the charges billed were reasonable and the services necessary. The jury found that Escabedo's negligence caused the accident and that Haygood's damages were $110,069.12 for past medical expenses, $7,000 for future medical expenses, $24,500 for past pain and mental anguish, and $3,000 for future pain and mental anguish. The trial court overruled Escabedo's objection to an award of past medical expenses in excess of those paid or owed and rendered judgment on the verdict.

The court of appeals reversed, holding that section 41.0105 precluded evidence or recovery of expenses that "neither the claimant nor anyone acting on his behalf will ultimately be liable for paying".[8] The court suggested a remittitur of the amount of the health care providers' adjustments,[9] which Haygood did not accept, and the case was remanded for a new trial.[10] The court noted that two other courts had reached conflicting decisions.[11] We granted Haygood's petition for review to resolve the conflict.[12]

## II

The Legislature enacted section 41.0105 against a backdrop of health care pricing

---

4. 42 C.F.R. § 405.501(a).

5. 42 C.F.R. § 405.502(a).

6. 42 U.S.C. § 1395cc(a)(1)–(2).

7. The record indicates that almost all of what has been paid was by insurance.

8. 283 S.W.3d at 7.

9. The court of appeals miscalculated the adjustments by $35. Id. at 5, 8.

10. Id. at 8.

11. Id. at 7 (citing Irving Holdings, Inc. v. Brown, 274 S.W.3d 926, 931–933 (Tex.App.-Dallas 2009, pet. denied), and Gore v. Faye, 253 S.W.3d 785, 789–790 (Tex.App.-Amarillo 2008, no pet.)). Since then, two other courts have followed Brown. Arango v. Davila, Nos. 13–09–00470–CV, 13–09–00627–CV, 2011 WL 1900189, at *9 (Tex.App.-Corpus Christi May 19, 2011, no pet. h.); Frontera Sanitation, L.L.C. v. Cervantes, 342 S.W.3d 135, 140 (Tex. App.-El Paso 2011, no pet. h.).

12. 53 Tex. Sup.Ct. J. 562 (Apr. 9, 2010).

practices and the collateral source rule. We discuss each before turning to the statutory text and its consequences.

## A

Charges for health care, once based on the provider's costs and profit margin, have more recently been driven by government regulation and negotiations with private insurers.[13] A two-tiered structure has evolved: "list" or "full" rates sometimes charged to uninsured patients,[14] but frequently uncollected,[15] and reimbursement rates for patients covered by government and private insurance.[16] We recently observed that "[f]ew patients today ever pay a hospital's full charges, due to the prevalence of Medicare, Medicaid, HMOs, and private insurers who pay discounted rates."[17] Hospitals, like health care providers in general,[18] "feel financial pressure to set their 'full charges' ... as high as possible, because the higher the 'full charge' the greater the reimbursement amount the hospital receives since reimbursement rates are often set as a percentage of the hospital's 'full charge.'"[19]

Although reimbursement rates have been determined to be reasonable under

---

**13.** *See* Keith T. Peters, *What Have We Here? The Need for Transparent Pricing and Quality Information in Health Care: Creation of an SEC for Health Care*, 10 J. HEALTH CARE L. & POL'Y 363, 366 (2007) ("The price of a particular provider's services depends on many factors including geography, experience, location, government payment methods, and the desire to make a profit. Hospital prices are supposed to be determined by the cost of providing care. However, the reimbursement rates for federal programs such as Medicare and Medicaid drive the list price of health care.") (footnotes omitted).

**14.** *See* Uwe E. Reinhardt, *The Pricing Of U.S. Hospital Services: Chaos Behind A Veil Of Secrecy*, 25 HEALTH AFF. 57, 62 (2006) ("Partly under pressure from consumers and lawmakers and partly on their own volition, many hospitals now have means-tested discounts off their chargemasters for uninsured patients, which bring the prices charged the uninsured closer to those paid by commercial insurers or even below. Some very poor patients, of course, have received hospital care free of charge all along, on a purely charitable basis.") (footnote omitted).

**15.** *See* George A. Nation III, *Obscene Contracts: The Doctrine of Unconscionability and Hospital Billing of the Uninsured*, 94 KY. L.J. 101, 120 (2005–06) ("While all uninsured patients are expected to pay the hospital's 'full charges,' it appears that in fact less than five percent actually pay the full charge.").

**16.** *See* Peters, *supra* note 13, at 366 ("The 'price' of health care ... can be divided into two prices. First, there is the list price[,] ... similar to the sticker price one might find when purchasing a new car—it serves only as a beginning point for the negotiations, for those who have the market share to negotiate.... From these list prices, private insurers, Medicaid and Medicare, and other groups negotiate discounts to arrive at ... the 'actual price.' Although the list price of health care varies widely across different regions of the country, the actual price paid is relatively static.") (footnotes omitted).

**17.** *Daughters of Charity Health Servs. of Waco v. Linnstaedter*, 226 S.W.3d 409, 410 (Tex. 2007) (citing Nation, *supra* note 15, at 104 ("[A] hospital's 'regular rates,' 'full charges,' or 'list prices' ... are generally at least double and may be up to eight times what the hospital would accept as payment in full for the same services from Medicare, Medicaid, HMOs, or private insurers. The labels for these charges, 'regular,' 'full,' or 'list,' are misleading, because in fact they are actually paid by less than five percent of patients nationally.") (footnotes omitted)).

**18.** *See, e.g., Vencor, Inc. v. Nat'l States Ins. Co.*, 303 F.3d 1024, 1029 n. 9 (9th Cir.2002) ("It is worth noting that in a world in which patients are covered by Medicare and various other kinds of medical insurance schemes that negotiate rates with providers, providers' supposed ordinary or standard rates may be paid by a small minority of patients.").

**19.** *See* Nation, *supra* note 15, at 119.

Medicare or other programs, or have been reached by agreements between willing providers and willing insurers, providers nevertheless maintain that list rates are also reasonable. Providers commonly bill insured patients at list rates, with reductions to reimbursement rates shown separately as adjustments or credits.[20] Portions of bills showing only list charges are admitted in evidence, with proof of reasonableness coming from testimony by the provider, or more often, by affidavit of the provider or the provider's records custodian as permitted by section 18.001 of the Texas Civil Practice and Remedies Code.[21]

In all these respects, the present case is entirely typical. The providers testified the charges billed to Haygood were reasonable, even though those charges were four times the amount they were entitled to collect.

## B

As a general principle, compensatory damages, like medical expenses, "are intended to make the plaintiff 'whole' for any losses resulting from the defendant's interference with the plaintiff's rights."[22] The collateral source rule is an exception.[23] Long a part of the common law of Texas[24] and other jurisdictions,[25] the rule precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else—

---

**20.** *See* James McGrath, *Overcharging the Uninsured in Hospitals: Shifting a Greater Share of Uncompensated Medical Care Costs to the Federal Government*, 26 QUINNIPIAC L.REV. 173, 183 (2007) ("Hospitals usually bill all patients at the list price for the same service, and then significantly discount these rates for third-party payers who contract with the hospital."); Reinhardt, *supra* note 14, at 59 ("Typically, a hospital will submit, for all of its patients, detailed bills based on its charge-master, even to patients covered by Medicare. An advantage of these bills is that at least in principle, patients can check whether all of the supplies and services listed on the bill were actually delivered. A disadvantage, for hospitals, is that these bills are very lengthy and add up to large totals that do not bear any systematic relationship to the amounts third-party payers actually pay them for the listed services.").

**21.** TEX CIV. PRAC. & REM.CODE § 18.001(b) ("Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary."); *id.* § 18.001(c) ("The affidavit must: (1) be taken before an officer with authority to administer oaths; (2)

be made by: (A) the person who provided the service; or (B) the person in charge of records showing the service provided and charge made; and (3) include an itemized statement of the service and charge.").

**22.** *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 16 (Tex.1994).

**23.** *See* RESTATEMENT (SECOND) OF TORTS § 920A cmt. b (1977) ("Payments made or benefits conferred by other sources are known as collateral-source benefits. They do not have the effect of reducing the recovery against the defendant. The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury.").

**24.** *Mid–Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex.1999); *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex.1980); *Tex. & Pac. Ry. Co. v. Levi & Bro.*, 59 Tex. 674, 676 (1883).

**25.** *See* RESTATEMENT (SECOND) OF TORTS § 920A(2) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.").

a collateral source. Thus, for example, insurance payments to or for a plaintiff are not credited to damages awarded against the defendant.[26] "The theory behind the collateral source rule is that a wrongdoer should not have the benefit of insurance independently procured by the injured party, and to which the wrongdoer was not privy."[27]

Haygood contends that an adjustment in billed medical charges required by an insurer is a collateral benefit covered by the rule. We disagree. The benefit of insurance to the insured is the payment of charges owed to the health care provider. An adjustment in the amount of those charges to arrive at the amount owed is a benefit to the insurer, one it obtains from the provider for itself, not for the insured. Haygood argues that the adjustment reduces the insured's liability, but the insured's liability is for payment of taxes, if a government insurer, or premiums, if a private insurer, and for any deductible. Any effect of an adjustment on such liability is at most indirect and is not measured by the amount of the adjustment.

The collateral source rule reflects "the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor."[28] To impose liability for medical expenses that a health care provider is not entitled to charge does not prevent a windfall to a tortfeasor; it creates one for a claimant, as we recently wrote in *Daughters of Charity Health Services of Waco v. Linnstaedter.*[29] Linnstaedter and Bolen sued Jones for injuries they sustained in a motor vehicle accident, claiming damages for the full amount of their hospital expenses.[30] The hospital was reimbursed part of those expenses by workers' compensation insurance and was precluded from seeking payment of the unpaid balance from its patients by the Workers' Compensation Act.[31] Nevertheless, the hospital asserted a lien on any damages the patients recovered against Jones.[32] Jones settled with the patients and paid the hospital the balance on its bill to discharge the lien.[33] The patients then sued the hospital for the amount of that payment.[34] We held that the hospital's claim to part of the patients' recovery against Jones was a claim against the patients themselves that was precluded by the

---

26. *Mid–Century*, 997 S.W.2d at 274 ("The collateral source rule bars a wrongdoer from offsetting his liability by insurance benefits independently procured by the injured party."); *Levi*, 59 Tex. at 676 ("The insurer and the defendant are not joint tort-feasors or joint debtors so as to make the payment or satisfaction by the former operate to the benefit of the latter; nor is there any legal privity between the defendant and the insurer so as to give the former the right to avail itself of a payment by the latter. The policy of insurance is collateral to the remedy against the defendant, and was procured solely by the plaintiff at his expense, and to the procurement of which the defendant was in no way contributory.... It cannot be said that the plaintiff took out the policy in the interest or behalf of the defendant, nor is there any legal principle which seems to require that it be

ultimately appropriated to the defendant's use and benefit.") (internal quotation marks omitted).

27. *Brown*, 601 S.W.2d at 934.

28. RESTATEMENT (SECOND) OF TORTS § 920A cmt. b.

29. 226 S.W.3d 409, 412 (Tex.2007).

30. *Id.* at 410, 412.

31. *Id.* at 410–411.

32. *Id.* at 410.

33. *Id.*

34. *Id.*

Act.[35] Furthermore, we said, to allow the hospital to recover more than the reimbursement allowed by the Act would defeat its purpose of controlling medical costs.[36] But the patients had sued Jones for "the full medical charges billed by the hospital rather than the reduced amount paid by their compensation carrier".[37] "[A] recovery of medical expenses in that amount", we said, "would be a windfall; as the hospital had no claim for these amounts against the patients, they in turn had no claim for them against Jones."[38] Moreover, we noted, this rule had been codified in section 41.0105.

■ Consistent with our views in *Daughters of Charity*, we hold that the common-law collateral source rule does not allow recovery as damages of medical expenses a health care provider is not entitled to charge.[39]

## C

■ With this background, we turn to the text of section 41.0105, which states simply: "In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant."[40] Haygood argues that a claimant incurs the full charges billed by a provider, even if the provider is required by law or contract to reduce those charges because the claimant is covered by insurance, and therefore the statute imposes no limit on recovery. In his view, "actually" modifies only "paid", or if it also modifies the second "incurred", then the first "incurred" and "actually incurred" mean the same thing. Either way, the sentence reads: "recovery of . . . expenses incurred is limited to the amount . . . incurred". This is a meaningless tautology. "Statutory language should not be read as pointless if it is reasonably susceptible of another construction."[41] An amount "actually paid" unquestionably means one for which payment has been made. And it is reasonable to read "actually" as also modifying "incurred",[42] referring to expenses that are to be paid, not merely included in an invoice and then adjusted by required credits. Thus, "actu-

---

35. *Daughters of Charity*, 226 S.W.3d at 411 ("[A] lien against a patient's tort recovery is just as much a claim against the patient as if it were filed against the patient's house, car, or bank account.").

36. *Id.* at 412 ("Further, granting hospitals a lien in excess of the established guidelines for fair and reasonable rates would frustrate the Legislature's effort to achieve effective medical cost control through the Labor Code.").

37. *Id.*

38. *Id.*

39. Courts in other jurisdictions have split on this issue. Some agree. *Slack v. Kelleher*, 140 Idaho 916, 104 P.3d 958, 967 (2004); *Stanley v. Walker*, 906 N.E.2d 852, 857–858 (Ind.2009); *Martinez v. Milburn Enters.*, 290 Kan. 572, 233 P.3d 205, 222–223 (2010); *Robinson v. Bates*, 112 Ohio St.3d 17, 857 N.E.2d 1195, 1200–1201 (2006). Others do

not. *Helfend v. S. Cal. Rapid Transit Dist.*, 2 Cal.3d 1, 84 Cal.Rptr. 173, 465 P.2d 61, 69 (1970); *Wills v. Foster*, 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018, 1030 (2008); *Bozeman v. State*, 879 So.2d 692, 701–702 (La.2004); *Covington v. George*, 359 S.C. 100, 597 S.E.2d 142, 144–145 (2004); *Acuar v. Letourneau*, 260 Va. 180, 531 S.E.2d 316, 322–323 (2000); *Leitinger v. DBart, Inc.*, 302 Wis.2d 110, 736 N.W.2d 1, 14 (2007).

40. Tex. Civ. Prac. & Rem.Code § 41.0105.

41. *Franka v. Velasquez*, 332 S.W.3d 367, 393 (Tex.2011).

42. *See, e.g., McIntyre v. Ramirez*, 109 S.W.3d 741, 746 (Tex.2003) (holding that the adverb "ordinarily" in the phrase "a person who would ordinarily receive or be entitled to receive a salary, fee, or other remuneration for administering care" modifies both "receive" and "be entitled to receive").

ally paid and incurred" means expenses that have been or will be paid, and excludes the difference between such amount and charges the service provider bills but has no right to be paid.

Haygood argues that this construction is inconsistent with our decision in *Black v. American Bankers Insurance Co.*,[43] but it is not. Black sued his health insurer, American Bankers, for medical bills, a portion of which had been paid by Medicare.[44] The policy covered expenses Black "actually incurred", and American Bankers argued that Black had not actually incurred the expenses paid by Medicare because he was never liable for them.[45] We held that the issue had been "resolved by the stipulation of the parties, which recites that plaintiff 'incurred the reasonable, necessary and customary charges by said Hospital . . . as shown by the bill' ".[46] We added: "Further, as a matter of law, we hold that when plaintiff entered the hospital and received its services, there was created an implied contract to pay for same, and he was liable therefor until he or someone else paid the bill." [47] *Black* differs from the present case, not only because it involved the construction of a policy and primary insurance issues, but also because Black's entire bill was actually paid while most of Haygood's bill was adjusted with credits the service provider was required to apply.

Haygood concedes that in *Daughters of Charity*,[48] "[t]his court has previously implied that § 41.0105 affects the recovery of medical expenses",[49] but our decision in that case was more than an implication. As already explained, we held that a tortfeasor is not liable to a health care provider or its patients for medical expenses the patients were not required to pay the provider. For the patients to recover such expenses from the tortfeasor "would be a windfall".[50] Our holding, we said, had been "codified" in section 41.0105.[51] The effect of section 41.0105 is thus to prevent a "windfall" to a claimant. Our decision in *Daughters of Charity* does not merely imply that Haygood's argument is without merit; it rejects the argument outright.

■ Finally, Haygood argues that if the Legislature had intended to limit recovery, it would also have had to amend section 18.001 of the Civil Practice and Remedies Code, which states in part:

> Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.[52]

But this statute is purely procedural, providing for the use of affidavits to streamline proof of the reasonableness and necessity of medical expenses. The statute does not establish that billed charges are reasonable and necessary; on the contrary, it expressly contemplates that the issue can

**43.** 478 S.W.2d 434 (Tex.1972).

**44.** *Id.* at 435.

**45.** *Id.* at 435–436.

**46.** *Id.* at 437.

**47.** *Id.*

**48.** 226 S.W.3d 409, 412 n. 22 (Tex.2007).

**49.** Petitioner's Brief on the Merits at 8 n. 2 (emphasis omitted).

**50.** *Daughters of Charity*, 226 S.W.3d at 412.

**51.** *Id.* at 412 n. 22.

**52.** Tex. Civ. Prac. & Rem.Code § 18.001(b).

be controverted by affidavit, which could aver that only the amount actually paid was reasonable.

Accordingly, we hold that section 41.0105 limits a claimant's recovery of medical expenses to those which have been or must be paid by or for the claimant. All the courts of appeals that have addressed the issue have reached the same conclusion,[53] although as we have said, there has been disagreement over the effect of section 41.0105 on the evidence at trial, the issue to which we now turn.

**D**

■ Haygood argues that even if section 41.0105 precludes recovery of expenses a provider has no right to be paid, evidence of such expenses is nonetheless admissible at trial. "Evidence which is not relevant is inadmissible."[54] This includes evidence of a claim of damages that are not compensable.[55] Since a claimant is not entitled to recover medical charges that a provider is not entitled to be paid, evidence of such charges is irrelevant to the issue of damages.

The question remains whether such evidence has any other probative value. A few courts in other jurisdictions have expressed concern that limiting the evidence to amounts that have been or must be paid provides the jury an unfairly low benchmark with which to gauge the seriousness of the plaintiff's injuries and awarding non-economic damages, such as for physical pain and mental anguish.[56] But there is no unfairness if reimbursable amounts are reasonable for the services provided. In this case, Medicare, as required by federal law, determined that the charges it reimbursed were reasonable, given customary and prevailing rates where Haygood was treated. Even so, Haygood argues, if he were uninsured, his medical expenses would not be subject to adjustments or credits, and evidence of more expensive treatment would suggest to the jury that his injuries were more serious. It is unfair, he contends, to treat insured and uninsured claimants differently. Haygood's solution is to allow the jury to consider evidence of non-recoverable economic damages in setting non-economic damages. But we think that any relevance of such evidence is substantially outweighed by the confusion it is likely to generate, and therefore the evidence must be excluded.[57]

Haygood argues that if the Legislature had intended to allow evidence of amounts

**53.** *Arango v. Davila*, Nos. 13–09–00470–CV, 13–09–00627–CV, 2011 WL 1900189, at *9 (Tex.App.-Corpus Christi May 19, 2011, no pet. h.); *Frontera Sanitation, L.L.C. v. Cervantes*, 342 S.W.3d 135, 140 (Tex.App.-El Paso 2011, no pet. h.); *Progressive Cnty. Mut. Ins. Co. v. Delgado*, 335 S.W.3d 689, 692 (Tex.App.-Amarillo 2011, no pet. h.); *Pierre v. Swearingen*, 331 S.W.3d 150, 155–156 (Tex. App.-Dallas 2011, no pet. h.); *Tate v. Hernandez*, 280 S.W.3d 534, 540–541 (Tex.App.-Amarillo 2009, no pet.); *Matbon, Inc. v. Gries*, 288 S.W.3d 471, 481–482 (Tex.App.-Eastland 2009, no pet.).

**54.** Tex R. Evid. 402.

**55.** *E.g., State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988) ("[T]he introduc-

tion of evidence on [non-compensable] damages . . . is improper as a matter of law. . . ."); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex.2001) (same).

**56.** *Wills v. Foster*, 229 Ill.2d 393, 323 Ill.Dec. 26, 892 N.E.2d 1018, 1031–1032 (2008); *Covington v. George*, 359 S.C. 100, 597 S.E.2d 142, 144–145 (2004); *Leitinger v. DBart, Inc.*, 302 Wis.2d 110, 736 N.W.2d 1, 14 (2007).

**57.** Tex.R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.").

actually paid to be offered at trial, it would also have had to amend sections 41.012 and 18.001 of the Civil Practice and Remedies Code. Section 41.012 states that "[i]n a trial to a jury, the court shall instruct the jury with regard to Sections 41.001, 41.003, 41.010, and 41.011"[58]—that is, the jury must be instructed on the standards for recovery of exemplary damages and the factors to be considered in setting any award. But an instruction on the limit on recovery of medical expenses would be necessary only if evidence of amounts charged were admitted along with evidence of amounts paid or to be paid. The absence of a statutorily required jury instruction suggests that the Legislature intended either that juries not be given the only evidence relevant to recovery or that they be given only evidence relevant to recovery. Since the jury cannot determine what expenses were necessary absent evidence relevant to recovery, we think the Legislature must have intended the latter. As for section 18.001, as already explained, it merely provides for any dispute over reasonable and necessary expenses to be teed up by affidavit, and says nothing about whether unpaid expenses are reasonable and necessary.

■ The dissent argues that the jury should consider only evidence of charges billed, without adjustments or credits required by insurers. Evidence of expenses paid or to be paid, the dissent urges, should be presented to the trial court post-verdict by the defendant. A fundamental rule is that "[t]o recover damages, the burden is on the plaintiff to produce evidence from which the jury may reasonably infer that the damages claimed resulted from the defendant's conduct."[59] The only justification the dissent has for shifting the burden of proof to the defendant is that section 41.0105's limitation on damages is like the monetary caps imposed by other statutes. But imposing a monetary cap never requires the court to resolve a disputed fact; limiting the recovery of expenses to those actually paid often does. For one thing, parties may dispute whether expenses are necessarily related to a plaintiff's injuries. In *Texarkana Memorial Hospital v. Murdock*, for example, we held that there was evidence that only some but not all of the plaintiff's medical expenses found by the jury were related to her injuries.[60] The issue could not simply be redetermined by the trial court; the case had to be retried to the jury.[61] Also, the parties may disagree whether any part of some providers' charges is reasonable. If the jury awards less than the total of all charges, the trial court may have no way of knowing which charges the jury found reasonable and which it did not. In all these situations, a requirement that the trial court resolve disputed facts in determining the damages to be awarded violates the constitutional right to trial by jury. "In enacting a statute, it is presumed that ... compliance with the constitutions of this state and the United States is intended; ... a just and reasonable result is intended; [and] a result feasible of execution is intended...."[62] The dissent's construction of section 41.0105 is contrary to all three presumptions.

■ Accordingly, we hold that only evidence of recoverable medical expenses is admissible at trial. We disapprove the cases that have reached conflicting deci-

---

**58.** Tex. Civ. Prac. & Rem.Code § 41.012.

**59.** *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 838 (Tex.1997).

**60.** *Id.* at 840–841.

**61.** *Id.* at 841.

**62.** Tex. Gov't Code § 311.021.

sions.[63] Of course, the collateral source rule continues to apply to such expenses, and the jury should not be told that they will be covered in whole or in part by insurance. Nor should the jury be told that a health care provider adjusted its charges because of insurance.

\* \* \*

We agree with the opinion of the court of appeals, and therefore its judgment is

*Affirmed.*

Justice LEHRMANN filed a dissenting opinion, in which Justice MEDINA joined.

Justice LEHRMANN, joined by Justice MEDINA, dissenting.

Today, the Court holds that a claimant may neither recover amounts written off and never paid, nor introduce evidence of such amounts during trial. I agree with the Court that section 41.0105 reflects the Legislature's intent to restrict the amount of past medical expenses that may be recovered. However, I disagree with the Court's conclusion that the Legislature intended to prohibit the introduction of evidence of amounts that are written off and never paid, as they represent collateral source benefits. Neither the "express terms" of the statute, which speak only to a claimant's *recovery* of past medical expenses, "[n]or [any] necessary implications" support such a conclusion. *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex.2000) (citation omitted). Furthermore, one consequence of the Court's decision is that juries may deliver insupportably divergent results as between those plaintiffs who are insured and those who are not, resulting in inconsistent appellate

review of damages awards in some tort cases. I would hold that the court of appeals erred to the extent it held that section 41.0105 affects the admissibility of evidence of past medical expenses. It suggested a remittitur, but based on improper grounds. Therefore, I would reverse the court of appeals' judgment and remand to that court.

## I. ANALYSIS

I agree with the Court that section 41.0105 abrogates the collateral source rule as a rule of recovery by proscribing damages awards for amounts written off and never paid. While the precise issue was not before us, we implied as much in *Daughters of Charity Health Services of Waco v. Linnstaedter*, 226 S.W.3d 409, 410 (Tex.2007). However, while the Court's reasoning as to recovery is solidly grounded, its holding as to the admissibility of evidence of adjusted charges finds scant support in the statute's language, is contradicted by the statute's legislative history, and runs counter to long-standing common law.

It is not the prerogative of the Court to second-guess the Legislature's policy choices. Rather, it is the Court's duty to discern and implement the law in accordance with, not in contravention of, the Legislature's intent. Here, the Court ignores the obvious conflict between section 41.0105's title and its text. In doing so, the Court reaches its conclusion without utilizing either the statute's legislative history or any one of the enumerated statutory construction aids. *See* TEX. GOV'T CODE § 311.023. When a statute's text is only amenable to one reasonable interpre-

**63.** *Arango v. Davila*, Nos. 13–09–00470–CV, 13–09–00627–CV, 2011 WL 1900189 (Tex. App.-Corpus Christi May 19, 2011, no pet. h.); *Frontera Sanitation, L.L.C. v. Cervantes*, 342 S.W.3d 135 (Tex.App.-El Paso 2011, no pet.

h.); *Irving Holdings, Inc. v. Brown*, 274 S.W.3d 926 (Tex.App.-Dallas 2009, pet. denied); *Gore v. Faye*, 253 S.W.3d 785 (Tex. App.-Amarillo 2008, no pet.).

tation we eschew extrinsic sources. When a statute is subject to more than one reasonable interpretation, however, its history provides valuable insight. The Court's unwillingness to consult the drafting history of section 41.0105—even in the face of two competing, yet reasonable, interpretations—shakes the foundations of its decision. It is clear, in my opinion, that section 41.0105 was intended to limit a claimant's recovery of past medical expenses without disturbing the long-standing prohibition on introducing evidence of collateral source benefits such as medical charges that are written off and never paid. The legislative history of section 41.0105 supports this conclusion.

### A. Evidence of Past Medical Expenses

The collateral source rule has applied in Texas since 1883. *Tex. & Pac. Ry. Co. v. Levi & Bro.*, 59 Tex. 674, 676 (1883). Under the common law, a tortfeasor was not entitled to a liability offset for proceeds procured as a result of the injured party's independently bargained-for agreement with an insurance company or other source of benefits. *See Mid–Century Ins. Co. of Tex. v. Kidd*, 997 S.W.2d 265, 274 (Tex. 1999); *see also Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 934 (Tex. 1980). The rule was predicated on the notion that a tortfeasor should not benefit from an agreement to which the tortfeasor is not privy. *Brown*, 601 S.W.2d at 934. The collateral source rule has been applied to all manner of benefits, including payments received under a worker's compensation policy, *see Exxon Corp. v. Shuttlesworth*, 800 S.W.2d 902, 907–08 (Tex.App.-Houston [14th Dist.] 1990, no writ), income received as part of veterans' benefits, *see Montandon v. Colehour*, 469 S.W.2d 222, 229–30 (Tex.Civ.App.-Fort Worth 1971, no writ), and Social Security disability payments, *see Traders and Gen. Ins. Co. v.*

*Reed*, 376 S.W.2d 591, 593–94 (Tex.Civ. App.-Corpus Christi 1964, writ ref'd n.r.e.). In this sense, the collateral source rule was a rule of recovery.

But the collateral source rule also has an evidentiary aspect; the defendant may not introduce evidence at trial of collateral sources of compensation for a plaintiff's injuries. *See, e.g., Taylor v. Am. Fabritech*, 132 S.W.3d 613, 626 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (holding that governmental assistance payments made to plaintiff were a collateral source and that trial court erred when it allowed evidence of such payments); *Exxon Corp.*, 800 S.W.2d at 907–08 (excluding evidence of worker's compensation benefits). As a rule of evidence, the collateral source rule has excluded such things as evidence of payments and downward adjustments in accordance with Medicare guidelines. *See Matbon, Inc. v. Gries*, 288 S.W.3d 471, 480–82 (Tex.App.-Eastland 2009, no pet.); *Wong v. Graham*, No. 03–00–00440–CV, 2001 WL 123932, at *11 (Tex.App.-Austin Feb. 15, 2001, no pet.) (not designated for publication); *see also Briese v. Tilley*, No. C 08–4233 MEJ, 2010 WL 3749442, slip op. at 7–10 (N.D.Cal. Sept. 23, 2010).

### 1. Is the rule implicated?

The Court concludes that the collateral source rule is not implicated by statutory or contractual adjustments to medical charges because the discounted amounts are "a benefit to the insurer," not the insured. 356 S.W.3d 390, 395. While I agree the discounting of medical charges benefits insurers, I disagree that the rule is not otherwise implicated. Although medical expenses that are discounted and written off are not direct, out-of-pocket payments made on the plaintiff's behalf, the discount would not have occurred but

for the claimant's efforts.[1] That is to say, if Haygood had not been covered by Medicare or some private insurer, he would have been responsible for the full charges that were billed, and Margarita Garza de Escabedo would have become liable for them as the result of her negligence. *See* George A. Nation III, *Obscene Contracts: The Doctrine of Unconscionability and Hospital Billing of the Uninsured,* 94 KY. L.J. 101, 104 (2005–06). Even if Haygood had private insurance coverage, he might have been liable for the full charges if his insurer disputed the charges or the medical providers did not have a contractual relationship with Haygood's insurers.[2] The same rationale undergirding the collateral source rule's application to payments made by third-party providers applies equally to write-offs secured as a result of a contractual relationship with an insurance provider or rules governing programs like Medicare. The collateral source rule is clearly implicated when a tortfeasor would otherwise obtain a windfall from the injured party's efforts. *See Brown,* 601 S.W.2d at 934–35; *see also* RESTATEMENT (SECOND) OF TORTS § 920A cmt. b (1979). I would therefore hold that amounts written off and never paid pursuant to an insurance contract, Medicare, or Medicaid guidelines are collateral benefits.

### 2. Legislature's intent

I agree with the Court to the extent it concludes that the Legislature did not intend to abrogate the rule as it relates to *payments* made by collateral sources.

Consequently, my analysis is confined to whether the Legislature intended to abrogate the common law prohibition of evidence of amounts written off and never paid that may be ascribed to collateral sources. In construing a statute, we always strive to give effect to the Legislature's stated intent. TEX. GOV'T CODE § 311.021; *First Am. Title Ins. Co. v. Combs,* 258 S.W.3d 627, 631–32 (Tex.2008). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell,* 356 S.W.3d 407, 411 (Tex.2011) (citing *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex.2008)). When the Legislature's intent is not apparent from the plain meaning of a statute's language, we may resort to other construction aids, including legislative history. TEX. GOV'T CODE § 311.023(3); *see also Galbraith Eng'g Consultants, Inc. v. Pochucha,* 290 S.W.3d 863, 867–68 (Tex.2009). We further presume that the Legislature is aware of existing law when it enacts legislation. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877–78 (Tex.2001).

The plain language of section 41.0105 does not support the Court's conclusion that the Legislature intended to alter the status quo with regard to the admissibility of evidence. The statute's unambiguous text, which states that *"recovery* of medical or health care expenses incurred," refers only to a limitation on recovery, and makes

---

**1.** Medicare recipients become eligible for benefits either by contributing to Social Security for a specified period or by paying premiums. *See* 42 U.S.C. §§ 402(a), 426, 426–1, 1395c, 1395j, 1395o (2010).

**2.** In some cases, a covered patient will receive medical services from an out-of-network medical provider. The insurance company will make payment to the provider for less than the full charges; however, the provider is not obligated to accept the insurer's payment as satisfaction of the entire amount. In what is known as "balance billing," the provider seeks the balance of the charges from the patient. *See Miller v. Gorski Wladyslaw Estate,* 547 F.3d 273, 282–83 (5th Cir.2008) (applying Louisiana law).

no mention of evidence. TEX. CIV. PRAC. & REM.CODE § 41.0105 (emphasis added). The collateral source rule's prohibition on the introduction of evidence of payments by insurers as well as other collateral benefits, *e.g.*, written off medical charges, has long been firmly embedded in our common law. The Legislature was undoubtedly aware of the collateral source rule when it passed section 41.0105. *See Palacios*, 46 S.W.3d at 877–78. Therefore, had the Legislature intended to abrogate even a portion of the rule's evidentiary component, it would have explicitly done so in the text of the statute. Two provisions in chapter 41, which expressly limit the evidence that the trier of fact may consider in determining the amount of exemplary damages, stand as further proof that when the Legislature intends to alter the admissibility of evidence it unequivocally does so. *See* TEX. CIV. PRAC. & REM.CODE §§ 41.008(e), .011(b).[3] Haygood contends that the Legislature would not have included the word "evidence" in the title unless it intended to limit the evidence that can be introduced during trial. While I disagree with Haygood's proposed interpretation of section 41.0105, at a minimum, the conflict between section 41.0105's text and its title renders the statute susceptible to more than one reasonable interpretation. Thus, the use of statutory construction aids, including legislative history, is warranted. *Id.* at § 311.023(3). The lengthy and complicated legislative history of section 41.0105 clearly militates against Haygood's and, ultimately, the Court's characterization of the Legislature's intent in passing section 41.0105. The Legislature worked through several iterations of draft bills before settling on the current statute.

The first iteration of section 41.0105, which was included as part of a broader effort to reform medical malpractice laws, would have allowed "a defendant physician or health care provider [to] introduce evidence in a health care liability claim of any amount payable to the claimant as a collateral benefit." Tex. H.B. 3, 78th Leg., R.S. (2003). The proposed legislation would have defined "collateral source benefit[s]" as "benefit[s] paid or payable to or on behalf of a claimant under [ ] the Social Security Act ...; [ ] a state or federal income replacement, disability, workers' compensation, or other law that provides partial or full income replacement; or [ ] any insurance policy, other than a life insurance policy, including an accident, health, or sickness insurance policy; and [ ] a disability insurance policy." *Id.* There was no question at all that the bill would have abrogated the collateral source rule as a rule of evidence, but its application was limited to health care liability claims under former article 4590i. This proposed language survived the merging of House Bill 3, whose application was limited to medical malpractice claims, and House Bill 4, an omnibus civil justice reform bill. Tex. H.B. 4, 78th Leg., R.S. (2003). However, an amendment to House Bill 4 stripped from it the language abrogating the evidentiary aspect of the collateral source rule.

When House Bill 4 reached the Senate State Affairs Committee, it expanded section 41.0105's application beyond health care liability claims. The Senate further renamed the proposed statute "Evidence Relating to Amount of Economic Damages," and included the following language:

---

3. Section 41.008(e) states that "[t]he provisions of this section may not be made known to a jury by any means, including voir dire, introduction into evidence, argument, or instruction"; section 41.011(b) states that "[e]v- idence that is relevant only to the amount of exemplary damages that may be awarded is not admissible during the first phase of a bifurcated trial."

"[a] defendant may introduce evidence of any amount payable to the claimant as a collateral benefit arising from the event in the cause of action." Tex.C.S.H.B. 4, 78th Leg., R.S. (2003). Just like the initial version of section 41.0105 proposed in the House, the State Affairs Committee's proposed statute would have undoubtedly abrogated the collateral source rule both as a rule of recovery *and* a rule of evidence. But the final enrolled version of the bill amended the proposed statute once more, this time deleting the provisions concerning evidence of collateral sources. Despite the language of the bill being expressly limited to recovery of past medical expenses, it retained its title from the State Affairs Committee: "Evidence Relating to Amount of Economic Damages." Tex. H.B. 4, 78th Leg., R.S. (2003). The legislative history of section 41.0105 clearly illustrates that its title is nothing more than a remnant from proposed versions that failed to pass.

Furthermore, reading section 41.0105 in context with other laws concerning the proof and presentation of damages evidence supports my conclusion that section 41.0105 did not abrogate the collateral source rule's application as a rule of evidence. At the time section 41.0105 was enacted, section 41.012 directed that a court should instruct the jury with regard to several other provisions of chapter 41 establishing criteria and evidence to be considered in awarding exemplary damages. Tex Civ. Prac. & Rem.Code § 41.012. For instance, section 41.012 requires the jury to be instructed with regard to section 41.011, which limits the evidence that the trier of fact can consider in determining the amount of exemplary damages. Section 41.012 also requires that the jury be instructed with regard to section 41.003, under which exemplary damages may be awarded only if the claimant establishes by clear and convincing evidence that the claimant's harm resulted from fraud, malice, gross negligence, or as otherwise specified by statute. If the Legislature intended to limit the evidence placed in front of the jury, as opposed to a plaintiff's recovery, it likely would have amended section 41.012 and also expressly directed that the jury be instructed with regard to section 41.0105. *See id.*

Significantly, the Legislature also chose not to amend section 18.001 of the Code, which has long governed procedures for proving damages in personal injury cases. Under that section, an uncontroverted affidavit in proper form attesting

> that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

Tex. Civ. Prac. & Rem.Code § 18.001. If the Legislature intended that evidence of reasonable and necessary damages would no longer be admissible, it likely would have excluded medical services from section 18.001. The Legislature's decision to leave these sections unaltered, thus maintaining the status quo regarding evidence to a substantial degree, is telling. Furthermore, "a statute may be interpreted as abrogating a common-law principle only when its express terms or necessary implications clearly indicate the Legislature's intent to do so." *Cash Am.*, 35 S.W.3d at 16 (citation omitted). Here, neither the statute's words nor its context express clear legislative intent to modify the collateral source rule's evidentiary aspect. The legislative history of section 41.0105 likewise nullifies any argument that abrogation is necessarily implicit in the statute's language.

Finally, the Court's approach, which permits evidence of adjusted charges pursuant to an insurance agreement or Medicare and Medicaid requirements, will likely cause untenable and unjust results. *See* TEX. GOV'T CODE § 311.021(3) ("[I]t is presumed that [the Legislature intended] a just and reasonable result"). An uninsured plaintiff who receives medical care or an insured plaintiff who received medical care out-of-network is liable for the full amount billed. Under the Court's interpretation of section 41.0105, both plaintiffs would be entitled to recover the full amounts billed—assuming the jury finds them reasonable and necessary. However, insured plaintiffs would only be entitled to recover the aggregate of their payments plus the payments made by their insurance providers. Because the extent of the plaintiff's medical charges may affect the jury's calculation of non-economic damages, an uninsured plaintiff or an insured plaintiff who receives care out-of-network may be awarded significantly higher non-economic damages than an insured plaintiff. This would be the case even though they were billed the exact same amount for the exact same medical care to treat the exact same injuries.

Moreover, the severity of the plaintiff's injury is a factor that enters into the review of the legal and factual sufficiency of evidence supporting mental anguish damages. *See Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 797–798 (Tex.2006); *D. Burch, Inc. v. Catchings,* 2009 WL 2581862, at *4 (Tex.App.-Dallas 2009, pet. denied). In *Burch,* for example, the court considered the amounts billed by various medical providers in evaluating the factual sufficiency of the evidence supporting the amount of mental anguish damages awarded. Consequently, insured plaintiffs whose medical charges are written off and never paid may find it more difficult to establish the sufficiency of evidence supporting the amount of any mental anguish damages awarded.

## B.  Application of Section 41.0105

Having determined that Section 41.0105 precludes a plaintiff from recovering past medical expenses that are discounted and written off, but does not abrogate the collateral source rule as it applies to the admissibility of evidence of such amounts, I now turn to the statute's application. The Legislature's limitation of a plaintiff's recovery for past medical expenses through section 41.0105 is not novel. The Civil Practice and Remedies Code contains several similar examples of limitations on a plaintiff's recovery. *See* TEX. CIV. PRAC. & REM.CODE § 74.303 (limiting total recovery for wrongful death or survival action on a healthcare liability claim to $500,000, not including past and future medical expenses); *id.* § 75.004 (limiting liability in certain premises liability suits to $500,000 per person and $1 million in the aggregate); *id.* § 108.002 (limiting personal liability in suits against public servants to $100,000 where act or omission occurs during the course and scope of the public servant's employment). Section 41.0105's limitation on a claimant's recovery is analogous to these and other statutory damages caps. Like other statutory damages caps, Section 41.0105 should be implemented by the trial court post-verdict. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 132 S.W.3d 671, 677–79 (Tex.App.-Dallas 2004) (applying Chapter 74 statutory damages caps), *rev'd on other grounds,* 271 S.W.3d 238 (Tex.2008); *Signal Peak Enterprs. of Tex., Inc. v. Bettina Invs., Inc.,* 138 S.W.3d 915, 926–29 (Tex.App.-Dallas 2004, pet. struck) (holding that trial court should reform judgment to comply with statutory damages caps on exemplary damages).

Thus, I agree with the courts of appeals that have approved of the implementation of the section 41.0105 cap through a post-verdict modification. *See Matbon,* 288 S.W.3d at 481–82; *Irving Holdings, Inc. v. Brown,* 274 S.W.3d 926, 931 (Tex.App.-Dallas 2009, pet. denied); *Gore v. Faye,* 253 S.W.3d 785, 789–90 (Tex.App.-Amarillo 2008, no pet.). Under that procedure, the defendant would include with any post-verdict motion any evidence of discounts, credits, and write offs, as well as amounts actually paid by the patient and third parties. The trial court then would have the opportunity to evaluate the evidence, and if need be, reform the jury's verdict to reflect past medical expenses that were billed to the claimant, amounts actually paid, and amounts written off by the provider and never paid.

Escabedo argues that implementing section 41.0105 post-verdict will not work. But the Legislature has adopted a scheme that necessitates the post-verdict adjustment of damages in other provisions of the Civil Practice and Remedies Code. *See, e.g.,* TEX. CIV. PRAC. & REM.CODE § 41.008 (applying limitation on plaintiff's recovery of exemplary damages post-verdict). When the Legislature enacted liability caps on a plaintiff's recovery in wrongful death and survival suits in health care liability claims, it also required the following jury instruction: "Do not consider, discuss, nor speculate whether or not liability, if any, on the part of any party is or is not subject to any limit under applicable law." *Id.* § 74.303(e)(1); *see also id.* § 41.008(e). Thus, in other contexts in which the Legislature has placed a ceiling on a plaintiff's recovery, it has chosen not to apply the cap as a restriction on the amount of damages the jury can award. Instead, the jury determines damages and enters its verdict, then the trial court enforces the limitations when it renders judgment on the verdict.

I likewise am unpersuaded by Escabedo's argument that post-verdict modification could run afoul of our decisions in *Crown Life Insurance, Co. v. Casteel,* 22 S.W.3d 378 (Tex.2000), and *Harris County v. Smith,* 96 S.W.3d 230 (Tex.2002). Escabedo raised a hypothetical at oral argument in which a claimant receives treatment from two providers, one of whom has a contractual agreement with the hospital and one of whom does not. In the hypothetical, the jury is permitted to hear evidence of the total amount billed by both providers, as I propose, but the jury awards the plaintiff less than that amount. While Escabedo's hypothetical could conceivably lead to a *Casteel/Harris County* issue, that likelihood can be accounted for through the submission of carefully tailored jury questions. *See Greer v. Buzgheia,* 141 Cal.App.4th 1150, 46 Cal.Rptr.3d 780, 785–86 (2006) (rejecting defendant's motion for post-verdict reduction in damages awarded by jury because defendant failed to object to failure to segregate damages in verdict form). This post-verdict mechanism, though cumbersome, has been used by a number of California courts for over twenty years, and the case law does not reflect any pervasive problems with the process. *See, e.g., Olsen v. Reid,* 164 Cal.App.4th 200, 79 Cal.Rptr.3d 255, 256–57 (2008); *see id.* at 263–65 (Moore, Acting P.J., concurring).

## II. CONCLUSION

For these reasons, I am compelled to respectfully dissent. I would hold that section 41.0105 does not affect the admissibility at trial of evidence of discounts, credits, adjustments to medical bills, or amounts actually paid but disallows the recovery of the discounted portion as a past medical expense. The court of appeals suggested a remittitur reflecting the discounts, but based on improper grounds.

I would therefore remand to the court of appeals.