**BIG BIRD TREE SERVICE,**
**Appellant,**

v.

**Julian GALLEGOS, Appellee.**

**No. 05–10–00923–CV.**

Court of Appeals of Texas,
Dallas.

March 22, 2012.

Rehearing Overruled May 8, 2012.

Mark J. Carroll, Cedar Hill, TX, for Appellant.

Domingo Garcia, Paul R. Hornung, Law Office of Domingo Garcia, P.C., Dallas, TX, for Appellees.

Before Justices BRIDGES, O'NEILL, and FILLMORE.

## OPINION

Opinion By Justice O'NEILL.

In this suit for damages for an on-the-job-injury, Big Bird Tree Services appeals a judgment granted in favor of its former employee Julian Gallegos. In two issues, Big Bird contends (1) the trial court erroneously awarded medical expenses that were not "actually incurred," and (2) Gallegos did not present sufficient evidence to support the jury's award of lost wages. For the following reasons, we affirm the trial court's judgment.

Big Bird is a landscape and tree-cutting company. Big Bird hired Gallegos as a manual laborer. On the day of the accident, Gallegos was helping to build an addition to Big Bird's workshop. Gallegos was on a ladder working when the ladder broke. Gallegos was first given emergency services at Methodist Hospital, but was later transferred to Parkland Memorial Hospital, the public hospital serving Dallas County. Gallegos required multiple surgeries and now has fifteen screws in his foot. Gallegos could not return to work for one year after the accident, and still cannot work a full day.

Gallegos sued Big Bird alleging its negligence caused his injuries. He sought damages for the reasonable and necessary medical expenses he incurred, lost earning capacity, and pain and suffering. To prove his reasonable and necessary medical expenses, Gallegos relied on medical expense affidavits with attached billing records from UT Southwestern and Parkland stating that the services rendered were necessary and the amounts charged—$67,699.41 and $16,659.50 respectively—were reasonable. After hearing the evidence, the jury determined that Big Bird's negligence caused Gallegos's injuries and awarded him damages, including the reasonable and necessary medical expenses he had incurred, including those incurred at Parkland.

In its first issue, Big Bird contends the evidence is legally and factually insufficient to support the jury's award of medical expenses for services received at Parkland because Gallegos received those services free of charge pursuant to a charity program. At trial, in an offer of proof, Big Bird called Tracy Willliams, Parkland's custodian of billing records, who testified Gallegos was indigent and qualified for a healthcare charity program. Because of his eligibility, Gallegos was required only to pay small co-pays. Michelle Fisher, the records custodian of UT Southwestern, also testified in an offer of proof that UT Southwestern has a "charity contract" with Parkland for indigent patients. She explained that Park-

land is the entity that determines whether any patient qualifies for the program. Fisher testified that after a patient qualifies, if they discover the patient is able to pay, the patient will be billed. According to Fisher, Gallegos would be liable to UT Southwestern if he recovers for his medical expenses. She also testified, without objection, that this position—that Gallegos would be required to pay if he obtains a recovery—has been authorized by the Dallas County Parkland Board for UT Southwestern *and* Parkland. She testified the purpose of this policy is not to allow a patient to make money off of a case if the patient is not a true charity.

 In his first issue, Big Bird contends it should not be required to pay for the reasonable value of services rendered to Gallegos at Parkland because they were provided free of charge. The collateral source rule precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff from someone else. *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex.2011). In particular, if medical services are provided gratuitously to a plaintiff, he may still recover them from the tortfeasor. *See Tex. Power & Light Co. v. Jacobs*, 323 S.W.2d 483, 494–95 (Tex.Civ. App.-Waco 1959, writ ref'd n.r.e.); *see also Oil Country Haulers, Inc. v. Griffin*, 668 S.W.2d 903, 904 (Tex.App.-Houston [14th Dist.] 1984, no writ). The collateral source rule reflects "the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall to the tortfeasor." *Haygood*, 356 S.W.3d at 395. Thus, under the collateral source rule, Gallegos can recover for services paid for from a charitable source.

Big Bird, however, relies on section 41.0105 of the civil practice and remedies code for the proposition that Gallegos cannot recover for the reasonable value of the services he received at Parkland because those expenses were not "actually incurred." Section 41.0105 provides:

> In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant.

Tex. Civ. Prac. & Rem.Code Ann. § 41.0105 (West 2008). In *Haygood*, the Supreme Court discussed the collateral source rule and section 41.0105 in determining whether a plaintiff could recover full "list" prices for medical services in cases when a health care provider has agreed to accept payment of lower reduced rates by virtue of contracts with insurance carriers and Medicare and Medicaid regulations. In discussing that issue, the Supreme Court first made clear that Texas law allows a plaintiff to recover "reasonable medical expenses." However, the Court explained that determining what expenses were "reasonable" in a given case has become difficult in modern practice where medical providers accept payments far less than amounts billed based on contracts with insurance carriers and Medicare regulations.

The court held that limiting a plaintiff to recovery of these reduced fees did not violate the collateral source rule. In reaching its decision, the Court noted that the purpose of the collateral source rule is to prevent a windfall to the defendant when the plaintiff's costs are paid by a third party for the benefit of the plaintiff. *See Haygood*, 356 S.W.3d at 395. The court first specifically noted that the reduced rates were either determined to be "reasonable" under Medicare or other programs or were reached by agreement by willing providers and willing insurers. *Id.* at 394–95. Thus, the defendant was still required to pay for reasonable expenses and received no windfall. On the other hand, the Court stated that allowing a

plaintiff to recover for elevated expenses that a provider could not legally recover would create a windfall to the plaintiff. *See id.* at 395. The Court concluded "the common-law collateral source rule does not allow recovery as damages of medial expenses a health care provider is not entitled to charge." *Id.* at 395.

After concluding the collateral source rule does not permit recovery of elevated list prices, the Court then considered whether section 41.0105 prohibited a plaintiff from recovering the elevated price which the hospital could not contractually charge. The Court held that section 41.0105 limits a plaintiff's recovery to medical expenses that "have been or will be paid, and excludes the difference between such amount and charges the service provider bills but has no right to be paid." *Id.* at 396–97.

The factual situation before us does not fit neatly into section 41.0105 or the Court's ruling in *Haygood.* Gallegos received valuable medical services the cost of which was born by a charitable program administered by Parkland Hospital. Gallegos qualified for the program because he was indigent. The record shows that Parkland determined Gallegos's status and eligibility and, because of its own determination, agreed to provide the services free of charge. Unlike *Haygood,* there was no evidence of any contract that would have prohibited Parkland or Southwestern from charging Gallegos for the full value of the services rendered. Thus, we cannot conclude the hospital was not "entitled" to recover for the actual value of the services rendered. Indeed, there was testimony suggesting a patient's eligibility for the program can be changed by subsequent events. Specifically, UT Southwestern's custodian of records expressly testified that UT Southwestern expected to be paid if Gallegos were to recover. She also testified, without objection, that this was the policy the Parkland Board had authorized for both Parkland and UT Southwestern. Thus, we cannot say Parkland has no right to be paid for the services listed in its billing records.

Finally, we note that by concluding Big Bird is liable for reasonable medical expenses, we harmonize section 41.0105 with the collateral source rule and uphold the public policy considerations that the rule is designed to protect. Allowing a negligent tortfeasor to avoid liability for medical expenses born by a charity program designed to benefit indigent patients, not only results in a windfall to the tortfeasor, it rewards the tortfeasor for injuring an indigent plaintiff. Such a result is particularly contrary to public policy in this case where Gallegos was Big Bird's employee and was injured in the scope of his employment with Big Bird. Additionally, to adopt Big Bird's position, we would have to conclude no medical expenses were "actually" incurred by *or on behalf* of Gallegos. It is undisputed that Gallegos suffered serious injuries and required significant and valuable medical care. This expense was born by the charitable program. We conclude these medical expenses were actually incurred on behalf of Gallegos. Therefore, section 41.0105 does not preclude recovery under the facts of this case. We resolve the first issue against Big Bird.

■ In its second issue, Big Bird contends the evidence is legally and factually insufficient to support an award of lost earning capacity. In a legal sufficiency or no evidence review, we determine whether the evidence would enable reasonable and fair-minded people to reach the finding under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In conducting this review, we credit favorable evidence if reasonable factfinders could

and disregard contrary evidence unless reasonable factfinders could not. *Id.* We must consider the evidence in the light most favorable to the finding under review and indulge every reasonable inference that would support it. *Id.* at 822. We must sustain no-evidence points when the record reveals: a complete absence of evidence of a vital fact, the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810.

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *See Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *Thomas v. Uzoka,* 290 S.W.3d 437, 452 (Tex.App.-Houston [14th Dist.] 2009, pet. denied).

Lost earning capacity is an assessment of what the plaintiff's capacity to earn a livelihood actually was and the extent to which that capacity was impaired by the injury. *Scott's Marina at Lake Grapevine, Ltd. v. Brown,* 365 S.W.3d 146, 158–59 (Tex.App.-Amarillo 2012, no pet.). Lost earning capacity is not measured by what a person actually earned before an injury, but by what the person's capacity to earn was even if he had never worked in that capacity in the past. *Id; Gen. Motors Corp. v. Burry,* 203 S.W.3d 514, 553 (Tex. App.-Fort Worth 2006, pet. denied). Proof of loss of earning capacity is always uncertain and is left largely to the discretion of the jury. *Rigdon Marine Corp. v. Roberts,* 270 S.W.3d 220, 232 (Tex.App.-Texarkana 2008, pet. denied). Nevertheless, to support an award of damages for lost earning capacity, a plaintiff must present evidence sufficient to permit a jury to reasonably measure earning capacity in monetary terms. *Tagle v. Galvan,* 155 S.W.3d 510, 519–20 (Tex.App.-San Antonio 2004, no pet.); *Durham Transp. Co., Inc. v. Beettner,* 201 S.W.3d 859, 864 (Tex.App.-Waco 2006, pet. denied). Non-exclusive factors that may be considered in determining lost earning capacity include evidence of past earnings, the plaintiff's stamina, efficiency, and ability to work with pain, and the plaintiff's work-life expectancy. *Tagle,* 155 S.W.3d at 519.

At trial, Gallegos testified that he went to technical preparatory school and received training in refrigeration and air conditioning and welding. Over the years he worked as a welder for John Dear Welding and worked in construction. Before the accident, his last job was at Big Bird. After the accident, he could not work for one year. He then got a job at Jack in the Box where he worked for about one-and-a-half years. He currently works at a truck wash. He still has trouble with pain in his foot and is limited to working about six hours a day. At the time of his injury, Big Bird paid him $250 per week. At Jack in the Box, he made between $6.25 and $6.50 per hour. The car wash paid him between $8.25 and $8.60 an hour.

Gallegos's wife also testified about Gallegos's capacity to work. She said that before the accident, Gallegos was the primary income earner and was steadily employed, working as a welder, in refrigeration, in home building, and in doing yard work. Now, she said Gallegos can not even care for the family yard.

At the charge conference, Big Bird argued that no question on lost earning capacity should be submitted because Gallegos did not present evidence of his income tax liability on his past lost earnings. Big Bird also requested, in the alternative, a jury instruction that an award for lost earnings would be subject to federal income tax. The trial court determined there was some evidence of lost earning capacity, but submitted Big Bird's income tax instruction.

■ The jury awarded Gallegos $13,000 for loss of earning capacity in the past, and $17,880 for loss of earning capacity in the future. On appeal, Big Bird asserts Gallegos cannot recover anything for loss of earning capacity despite evidence of his loss of capacity to work, both qualitatively and quantitatively, because Gallegos did not present evidence of his federal income tax liability as required by section 18.091(a) of the civil practice and remedies code. Pursuant to section 18.091(a) of the civil practice and remedies code, evidence to prove loss of earnings or earning capacity "must be presented in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any federal income tax law." TEX. CIV. PRAC. & REM.CODE ANN. § 18.091(a) (West 2008). It also requires the jury be informed on what elements of its award are subject to federal income tax. Presumably, the purpose of the statute is to prevent a plaintiff from obtaining a windfall by being awarded pretax income on awards that are not subject to taxation.

The ultimate question presented by Big Bird is whether there was sufficient evidence presented to the jury to support its award of $13,000.00 for lost earning capacity in the past and $17,880.00 for lost earning capacity in the future. Gallegos was a healthy thirty-one-year-old skilled laborer who was performing manual labor at the time of the accident. He could not work for one full year because of the accident and, four years after the accident, still could not perform the same type of work or work for the same amount of time as he could before his injury. Gallegos testified to wages he had earned in the past. Although it appears Gallegos was testifying to pretax wages, Big Bird did not object to this testimony. We cannot say that Gallegos's testimony about past hourly or weekly wages, even if gross, had no relevance notwithstanding the limitations of section 18.091. Moreover, evidence of actual past-earnings is only one factor which may be considered in determining lost earning capacity. Further, given the minimal income at issue, the jury could have reasonably presumed Gallegos's effective tax rate was on the lower side. And even if the jury deducted for even a moderate effective income tax, the jury's relatively modest awards of $13,000 for lost capacity in the past and $17,880 for lost capacity in the future is justified by the evidence. We conclude the evidence is both legally and factually sufficient to support the jury's award. We resolve the second issue against Big Bird.

We affirm the trial court's judgment.