ACCEPTED
12-17-00150-cv
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/24/2018 11:33 AM
Pam Estes
CLERK

No. 12-17-00150-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
1/24/2018 11:33:43 AM
PAM ESTES
Clerk

# In the Twelfth Court of Appeals
# Tyler, Texas

Rodney Beasley,
*Appellant*

v.

Farmers Texas County Mutual Insurance
Company,
*Appellee*

## Appellant's Reply Brief

Gregory D. Smith
Nolan Smith
SMITH LEGAL, PLLC
110 N. College Ave., Suite 1120
Tyler, TX 75702
Telephone: (903) 630-7165
Facsimile:   (903) 609-3077
greg@smithlegaltx.com

W. Perry Zively, Jr.
CHANDLER, MATHIS & ZIVLEY, P.C.
601 Sawyer St., Suite 600
Houston, Texas 77007
Telephone: (713) 739-7722
Facsimile:   (713) 739-0922
pzivley@cmzlaw.net

Ronald S. Vickery
VICKERY LAW FIRM
210 S. Broadway, Suite 230
Tyler, Texas 75702
Telephone: (903) 504-5490
Facsimile:   (903) 787-7540
ron@vickerylawfirm.com

L. Boyd Smith Jr.
THE BOYD SMITH LAW FIRM, PLLC
601 Sawyer St., Suite 600
Houston, TX 77007
Telephone: (713) 343-8899
Facsimile:   (713) 343-9265
bsmith@boydsmithlaw.com

ATTORNEYS FOR APPELLANT

# Contents

Authorities ................................................................................................................. ii

The Reply Argument ................................................................................................ 1

    1.     Farmers misperceives the law of standing and the plea-to-the-jurisdiction device. ....................................................................................... 1

    2.     Farmers mischaracterizes the case and the issues. ........................................ 5

        A.   *Forth* does not let Farmers ignore Beasley's allegation of injury, whether for purposes of jurisdiction or the merits. ........................ 6

        B.   The PIP statute required Farmers to compute and pay Beasley's PIP benefit without regard to Blue Cross or its actions. ............................................................................................................... 8

        C.   *Haygood v. De Escabedo* does not support Farmers's attempts to take a forbidden regard of Blue Cross. ................................................... 10

        D.   Farmers's policy language cannot circumvent the PIP statute's prohibitions. ..................................................................................... 11

    3.     "Collateral source" does not mean what Farmers claims, but favors Beasley. ...................................................................................................... 12

    4.     Section 41.0105 does not apply, period. ...................................................... 13

Conclusion and Prayer .......................................................................................... 15

Certificate of Service ............................................................................................. 16

Certificate of Compliance ..................................................................................... 16

# Authorities

## Cases

*Ab-Tex Beverage v. Angelo State Univ.*, 96 S.W.3d 683
    (Tex. App.—Austin 2003, no pet.) ........................................................2

*Allstate Indemnity Company v. Forth*, 204 S.W.3d 795
    (Tex. 2006) ..............................................................................3, 6 - 8

*Askenase v. Maddox*, 1992 Tex. App. LEXIS 3337
    (Tex. App.—Dallas 1992, no writ) .......................................................2

*Casso v. Brand*, 776 S.W.2d 551
    (Tex. 1989) ...........................................................................................5

*Haygood v. De Escabedo*, 356 S.W.3d 390
    (Tex. 2011) .................................................................................10 - 13

*HealthSouth Med. Ctr. v. Employers Ins. Co.*, 232 S.W.3d 828
    (Tex. App.—Dallas 2007, pet. denied)...............................................2

*M. D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704
    (Tex. 2001) .........................................................................................3

*Mid-Century Ins. Co. v. Kidd*, 997 S.W.2d 265
    (Tex. 1999) .......................................................................................11

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629
    (Tex. 2012) .......................................................................................3, 4

*Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552
    (Tex. 1991) .......................................................................................12

*Okland v. Travelocity.com, Inc.*, 2009 Tex. App. LEXIS 4646
    (Tex. App.—Fort Worth 2009, pet. denied).....................................2

*Russell v. Saffold*, 225 S.W. 281
    (Tex. Civ. App.—Austin 1920, no writ)...............................................2

*Texas Ass'n of Business v. Tex. Air Control Bd.*, 852 S.W.2d 440
      (Tex. 1993) .........................................................................................2, 7

*Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217
      (Tex. 2004) ..............................................................................................4

*Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849
      (Tex. 2002) ..............................................................................................2

*Vee Bar, Ltd. v. BP Amoco Corp.*, 361 S.W.3d 128
      (Tex. App.-El Paso 2011, no pet.) ........................................................3

*Weslaco Indep. Sch. Dist. v. Perez*, 2013 Tex. App. LEXIS 9259
      (Tex. App.—Corpus Christi 2013, no pet.) ..........................................2

## Statutes

TEX. CIV. PRAC. & REM. CODE § 41.0105 .........................................................10, 13 - 15

TEX. INS. CODE ANN. § 1952.151 ...................................................................12

TEX. INS. CODE ANN. § 1952.155 ...................................................................8 - 11

**The Reply Argument**

Farmers's positions do not begin to support the trial court's dismissal order.

**1.      Farmers misperceives the law of standing and the plea-to-the-jurisdiction device.**

This case, a dispute over opposing legal interpretations of an insurance policy and a statute, presents no arguable basis for the trial court's grant of dismissal upon a jurisdictional plea. Farmers does not claim any immunity from suit. It does not argue that the types of claims Beasley raises (*i.e.,* contract breach and statutory violations) fall outside the district court's subject-matter jurisdiction or contend the amount in controversy exceeded the jurisdiction limit. In fact, Farmers does not argue *any* recognized basis for a jurisdictional plea. Instead, it posits that the courthose should be closed to Beasley simply because he has advanced contractual and statutory interpretations Farmers opposes. That kind of disagreement does not begin to impugn Beasley's standing or the trial court's jurisdiction. Just the opposite: it is the hallmark of all justiciable controversies.

Farmers has not cited any authority endorsing its odd and circular view of standing, under which a bona fide dispute over a contract's interpretation robs the courts of jurisdiction to adjudge that dispute. And try as we might, we have identified nothing close to any such authority. Instead, the cases involving successful pleas to the jurisdiction all clearly have concerned time-honored grounds negating jurisdiction, including:

1

- **sovereign immunity from suit:** *e.g., Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 851 (Tex. 2002) (sovereign immunity, which protects the state from lawsuits for money damages, barred general contractor from suing the TNRCC for breach of construction contract);

- **exclusive jurisdiction in another adjudicative body:** *e.g., HealthSouth Med. Ctr. v. Employers Ins. Co.*, 232 S.W.3d 828 (Tex. App.—Dallas 2007, pet. denied) (exclusive jurisdiction over workers' compensation matter lay in the Division of Worker's Compensation of the Texas Department of Insurance);

- **the suit solely seeks relief that the court lacks jurisdiction to award:** *e.g., Askenase v. Maddox*, 1992 Tex. App. LEXIS 3337 (Tex. App.—Dallas 1992, no writ) (Texas courts would be without jurisdiction of suit solely seeking adjudication of title to real property lying in another state);

- **failure to exhaust required administrative remedies:** *e.g., Weslaco Indep. Sch. Dist. v. Perez*, 2013 Tex. App. LEXIS 9259 (Tex. App.—Corpus Christi 2013, no pet.) (plea to jurisdiction granted where Commissioner of Education had sole authority and exclusive jurisdiction to make initial determination of educational employment matter);

- **an amount in controversy beyond the court's jurisdictional authority:** *e.g., Russell v. Saffold*, 225 S.W. 281 (Tex. Civ. App.—Austin 1920, no writ); or

- **failure to *allege* a particularized injury and a personal stake in the controversy:** *e.g., Texas Ass'n of Business v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *Okland v. Travelocity.com, Inc.*, 2009 Tex. App. LEXIS 4646, *17 (Tex. App.—Fort Worth 2009, pet. denied).

Farmers cites no such jurisdictional impediment. It simply argues the merits—a matter that can't be sufficient as a jurisdictional bar. Otherwise, a no-jurisdiction dismissal could be granted every time a case appeared to turn on a question of law. That, of course, is not the law. *See Ab-Tex Beverage v. Angelo State Univ.*, 96 S.W.3d 683, 686-88

(Tex. App.—Austin 2003, no pet.) (trial court's dismissal for want of jurisdiction is not res judicata of the merits).

Even Farmers's own authorities disagree with its approach to jurisdiction. In *Allstate Indemnity Company v. Forth*, the supreme court found dismissal proper, but it squarely placed its holding on a recognized impediment to jurisdiction: the plaintiff's failure to *allege* the kind of particularized injury that is essential to any justiciable controversy. 204 S.W.3d 795, 795 (Tex. 2006) ("Because there are no *allegations* that the insured suffered damages … we conclude that the trial court was correct to dismiss her suit."); *id.* at 796 ("Forth *did not claim* that Allstate's conduct had caused her any damage. … Because Forth *does not claim* that the manner in which Allstate settled her claim caused her any injury, we conclude that she does not have standing …".) (emphasis added).[1]

Likewise, in *M. D. Anderson Cancer Ctr. v. Novak,* the court dismissed the case because the plaintiff, having failed to *allege* an individualized injury, lacked the necessary personal stake in the controversy: while the suit accused the cancer center of indulging deceptive practices to solicit charitable donations, the plaintiff had no personal stake in the controversy, because he could not allege that he had given the center any funds. 52 S.W.3d 704, 707-08 (Tex. 2001). And both *Garcia* and *Miranda* were dismissed on the express basis of sovereign immunity. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d

---

[1] And in *Vee Bar, Ltd. V. BP Amoco Corp.,* the court found that dismissal had been granted in error. 361 S.W.3d 128, 131 (Tex. App.—El Paso 2011, no pet.).

629, 635 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

*Garcia* makes clear that its analysis is particular to cases involving sovereign-immunity grounds, and that the merits were relevant to jurisdiction only because those merits were essential to determining the threshold sovereign-immunity issue:

> **In a suit against a governmental employer**, the prima facie case implicates both the merits of the claim *and* the court's jurisdiction **because of the doctrine of sovereign immunity**. Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit. **As a result, immunity is properly asserted in a plea to the jurisdiction**. We held in *Garcia I* that "the TCHRA clearly and unambiguously waives immunity" for suits brought against school districts under the TCHRA. However, **the Legislature has waived immunity only for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder**. *Garcia*, 372 S.W.3d at 635-36 (italics in original, other emphasis added).

So it was governmental immunity—not any mere claim to being right on the merits—that supported the government's jurisdictional plea. The *Garcia* court underscored this when it discussed the prior decision in *State v. Lueck*, a whistleblower action filed against the State and the Texas Department of Transportation (thus implicating immunity).

In *Lueck*, as the *Garcia* court explained, TxDOT argued that Lueck had not actually reported a violation of law. Lueck, in response, accused the state of a mere merits attack. The supreme court held that the statutory whistleblower elements were *in the circumstances of that case* jurisdictional, but only because those elements *were essential to determining a jurisdictional immunity issue. See Garcia*, 372 S.W.3d at 636-37. Otherwise—

4

if, as in Beasley's case, there would have been no state actor claiming immunity—the merits of Lueck's action could not have triggered a jurisdictional analysis.

The opinion in *Miranda* likewise confirms that its jurisdictional analysis is limited to sovereign-immunity cases. After the text that Farmers cites, the *Miranda* court stressed that "[this] standard [for sovereign immunity] allows *the state* in a timely manner to extricate itself from litigation *if it is truly immune.* … Similar to the purpose of a plea to the jurisdiction, *which is to defeat a cause of action for which the state has not waived sovereign immunity*, … the purpose of summary judgments in Texas is 'to eliminate patently unmeritorious claims and untenable defenses.'" 133 S.W.3d at 228 (emphasis added), quoting *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989).

Here, in contrast, there is no immunity issue to transform the parties' merits dispute into a jurisdictional one. And neither party's pleadings suggests any other jurisdictional issue (*e.g.,* a claim of exclusive jurisdiction in another court or of a failure to exhaust administrative remedies).

Because Farmers has no viable jurisdictional attack, the dismissal must be reversed.

**2.     Farmers mischaracterizes the case and the issues.**

Beginning in its statement of the case, Farmers contends that Beasley had no unreimbursed expenses and "alleged no other damages." This is not credible. Beasley consistently and clearly has alleged actual damages—that he incurred, as provider bills

5

confirm, $2,662 in reasonable expenses, well in excess of the insurance policy's $2,500 PIP benefit, and yet Farmers refused to pay more than about a $1000 portion of that benefit. *E.g.*, CR 75 ("Beasley was injured in a motor vehicle accident and submitted a PIP claim for medical expenses totaling $2,662.54, exceeding Beasley's PIP policy limits. Farmers accepted coverage … but refused to pay the full $2,500 in PIP benefits. … In so doing, Farmers breached the insurance contract … The Texas Insurance Code … defines, in part, [Beasley's] damages which include the unpaid PIP benefits …".); *accord* CR 6. This suffices as an allegation of individualized injury and a real, justiciable controversy.

If Farmers wishes to factually dispute whether the $2,662 is a reasonable amount for the providers' services, it can do so—at a merits trial. But Farmers's current, argumentative characterization—in which Farmers wrongly prejudges the case—is a straw man and is no basis for a jurisdictional dismissal. It also is wrong on the merits.

A. *Forth* **does not let Farmers ignore Beasley's allegation of injury, whether for purposes of jurisdiction or the merits.**

Despite what Farmers claims, *Allstate Indemnity Co. v. Forth* is not on point.

**Regarding jurisdiction.** In *Forth*, the health-insuranceless Forth owed the full amount of her medical charges when Allstate, the PIP insurer, came into the picture. Allstate, unaided by any health insurer or anyone else, satisfied this liability. *Forth*, 204 S.W.3d at 796. Forth nonetheless sued Allstate, alleging that, in settling her bills, it had acted in "an arbitrary and unreasonable manner." *Id.* at 795. But Forth never claimed

6

this caused her any identified damage. And that was the key to the entire case. Forth's failure to even *allege* a cognizable injury was already recognized in other cases as a type of jurisdictional defect. *See Texas Ass'n of Business*, 852 S.W.2d at 444.

Here, however, Farmers had no dealings with Beasley's medical providers. Farmers did not negotiate, pay, or otherwise settle any medical bills. Beasley accordingly has not sued Farmers for any arbitrary or unreasonable provider settlement. Rather, Beasley has sued Farmers because it failed to pay him a full contractual benefit. *E.g.*, CR 7.

While *Forth* demonstrates that standing may be absent, and a jurisdictional plea allowed, when a plaintiff fails to even allege injury, it says nothing about the standing of a plaintiff such as Beasley, who identifies an injury and seeks its recovery upon established legal theories.

**The merits.** *Forth* also falls flat as a basis for upending Beasley on the underlying merits. Because *Forth* didn't involve first-party health insurance or any other specie of collateral source, the PIP statute's barrier to PIP insurers taking regard of collateral-source insurance never came into play. Indeed, it would have been impossible for the court in *Forth* to have invoked the prohibition against giving regard to collateral sources. It did not violate the PIP statute's prohibitions for Allstate to take account of its *own* actions—Allstate wasn't a prohibited collateral source. So the court in *Forth* never mentioned Section 1952.155 or that statute's phrase "without regard to … any collateral source," and never mentioned health insurance. *Forth* thus can't be "directly on point,"

7

*cf.* Farmers's Brief at 10, or help answer our issue about the effect of health insurer discounting on Farmers's PIP liability.[2]

Beasley, unlike the plaintiff in *Forth*, had health insurance, with Blue Cross, which discharged Beasley's liability to his medical providers before Farmers came on the scene. Thus, in contrast to the plaintiff in *Forth*, Beasley has no unreimbursed medical expenses because his collateral-source health insurance satisfied all such matters.

Section 1952.155 of the PIP statute—which, again, was not at issue in *Forth*—precludes Farmers from taking *any* regard of Blue Cross or its actions. The legislature in its wisdom, through the statutory phrase "without regard to … any collateral source," mandated this result in all cases where health insurance, or any other collateral source, is involved. Consequently, the PIP statute's requirement that Farmers act "without regard to … any collateral source" both explains the required outcome in our case and distinguishes that outcome from the result in *Forth*.

### B. The PIP statute required Farmers to compute and pay Beasley's PIP benefit without regard to Blue Cross or its actions.

Farmers, in its second issue statement, asks whether a provider discount negotiated by a collateral-source health insurer "fall[s] under the collateral source rule."

---

[2] Because the PIP statute obligates Farmers to pay reasonable expenses "without regard to" whether Blue Cross discounted or indemnified those expenses, TEX. INS. CODE ANN. § 1952.155, the merits issue is not what Blue Cross reimbursed or discounted, or what Beasley paid "out of pocket"; it is a matter of determining the reasonable amount or value of Beasley's medical services. The issue in *Forth,* in contrast, was "whether an insured has standing to sue her insurance company for settling her medical bills in what the insured considered to be an arbitrary and unreasonable manner." *Forth*, 204 S.W.3d at 795.

8

Brief at vii. This is the wrong question. Whereas the common-law collateral-source rule applies in litigation *against third-party tortfeasors*, *see infra*, the issues between Beasley and its first-party insurer, Farmers, involve no tortfeasor. These issues are instead controlled by a PIP statute that prohibits Farmers from giving regard to Blue Cross or its actions, regardless whether those actions amount to writing a check or negotiating a discounted payment.

Farmers next, in its statement of facts, suggests the question is whether Beasley may "recover a windfall." Brief at 1. This parrots what could be a good argument in another setting—that is, a tort case filed against a negligent third-party. But the question of "windfall" has no place in this suit, seeking recovery of Beasley's contractually promised PIP benefits and other statutory relief.

To now inquire about a possible windfall would defy the purposes underlying the PIP statute, which reflects a clear intent to do more than make the plaintiff whole: That is why the statute confers its benefits without regard to subrogation, without regard to fault, and without regard to collateral sources. TEX. INS. CODE ANN. § 1952.155.

Nor is there any reason for Farmers to fret about the disastrous effect of any Beasley "windfall"; the PIP statute adequately protects Farmers, by capping mandatory PIP coverage at a modest $2,500. The concept of an onerous "windfall" makes little sense at this minimal benefit level.

The paid-or-incurred statute and the PIP statute differ in their goals, in their mechanisms, and in their effects. But there is nothing improper about this. The legislature was perfectly free to protect tortfeasors from unduly onerous medical-expense awards, via the paid-or-incurred law, while simultaneously affording insureds with a minimal set of coverage rights against their first-party auto insurers.

**C.    *Haygood v. De Escabedo* does not support Farmers's attempts to take a forbidden regard of Blue Cross.**

Farmers touts *Haygood v. De Escabedo* as its other primary authority. And yet *Haygood* is of no consequence here, for two simple reasons. First, *Haygood* applied a statute (The Civil Practice and Remedies Code's Chapter 41) that is immaterial to Farmers's first-party contractual duties. And second, *Haygood* did not apply (and had no reason to apply) the PIP statute's prohibition against giving regard to collateral-source insurers.

As Farmers admits, in *Haygood,* Escabedo invoked Section 41.0105 as the basis for excluding evidence of medical expenses other than those "actually paid or [actually] incurred. Br. at 16. The *Haygood* court agreed that Section 41.0105—in the cases to which it applies—requires courts to take regard of insurer-discounted charges, to prevent windfall recoveries of large medical bills. *Haygood v. De Escabedo*, 356 S.W.3d 390, 395 (Tex. 2011). Here, though, the governing PIP statute does the opposite, precluding the first-party PIP insurer from taking *any* regard of the collateral-source health insurer's role, whether it be the health insurer's provider payments or its

10

discounting of provider bills. Tex. Ins. Code Ann. § 1952.155(a)(2). To take regard of either of these matters—the collateral-source insurer's provider payments or its provider discounts—is to give regard to collateral-source health insurance. The PIP statute's brightline, blanket prohibition facilitates the PIP statute's goal of providing the insured with a prompt, minimal benefit. *See Mid-Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 268-69 (Tex. 1999) ("PIP's limitations … along with its collateral source rule and no-fault features, are designed to simplify and hasten claim resolution and payment").

Farmers also notes that in *Haygood* the common-law collateral-source rule was at issue. Brief at 17. That rule, by definition, concerns *tortfeasor* liability. *See Haygood*, 356 S.W.3d at 394-95 (defining the collateral-source rule as precluding "any reduction in a *tortfeasor's* liability because of benefits received by the plaintiff from someone else") (emphasis added). It does not govern first-party claims such as Beasley asserts.

### D. Farmers's policy language cannot circumvent the PIP statute's prohibitions.

Farmers relies heavily on the word "incurred" in its policy's exclusion, which says PIP benefits would be confined to "1. Reasonable expenses incurred for necessary medical and funeral services." *E.g.*, Farmers's Brief at 3-4. Because of this one use of the term *incurred*, Farmers asks this Court to judicially read an "actually paid or [actually] incurred" requirement into the insurance policy. That is breathtaking.

If the mere word *incurred*, wherever used, were already as restrictive as *actually paid or [actually] incurred*, the paid-or-incurred statute would be a nullity and its careful

restriction of tort-suit medical-expense recoveries to amounts *actually paid or [actually] incurred* would be surplusage. That cannot be right.

Farmers's position also contravenes the rule that insurance-policy exclusions, exceptions, and limitations be interpreted in the insured's favor and against the insurer. *See Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). And Farmers's argument violates the PIP statute's mandate that PIP benefits cover "all reasonable expenses that … (3) are for: (A) necessary medical … services." TEX. INS. CODE ANN. § 1952.151. It imposes no further requirement that such expenses also be incurred in the sense of "actually paid or incurred."

A proper construction of Farmers's policy, harmonized with the governing PIP statute, is that "reasonable expenses incurred for necessary medical … services" simply identifies which expenses are being referenced—the ones that reflect "necessary medical … services," as opposed to expenses for services or items that may not have been necessary to the insured's medical care.

### 3. "Collateral source" does not mean what Farmers claims, but favors Beasley.

As Farmers observes, *collateral source* is not defined in the PIP statute and, thus, should be given its common-law meaning. But Farmers is wrong about what that meaning is. Citing *Haygood*, Farmers contends the term references only the "benefits received by the plaintiff," rather than their source (*i.e.*, the health insurer). Brief at 19, 20. Farmers misapprehends the supreme court's language.

Citing to the sentence running over from page 394 to page 395 of the *Haygood* opinion, Farmers claims:

> [A]s the Court explained in *Haygood*, it [*i.e.*, the term 'collateral source'] refers to '*benefits received by the plaintiff,*' [and] … does not include the discounted rates that Blue Cross paid to Beasley's medical providers. Brief at 19, 20 (emphasis in original).

This wordsmithing is central to Farmers's claim that it can take regard of *some* Blue Cross actions albeit not others. But this is not what the supreme court said. Not by a long shot. In the very passage that Farmers credits, the *Haygood* court actually concluded that the term *collateral source* references the *entity* sourcing the benefit or discount:

> Long a part of the common law of Texas and other jurisdictions, the [collateral-source] rule precludes any reduction in a tortfeasor's liability because of benefits received by the plaintiff **from someone else – a collateral source**. 356 S.W.3d at 394-95 (emphasis ours).

That is, the collateral source is the "someone else," in this case, Blue Cross. So, under Farmers's own logic, corrected for the supreme court's actual intendment, the PIP statute's prohibition upon taking regard of "collateral sources" must prohibit taking *any* regard of the health insurer Blue Cross or its actions. Any other result would contradict both *Haygood* and the legislature's plain statutory language.

### 4. Section 41.0105 does not apply, period.

In our principal brief, we argued that the "paid-or-incurred statute," Section 41.0105, does not apply. We explained that Chapter 41 is expressly reserved to claims for damages and does not control interpretation of insurance contracts. Br. at 11-12. We further explained that Section 41.0105 addresses recovery of medical expenses,

13

whereas Beasley's claims against Farmers are based on breach of contract, for refusing contractually agreed payments. Br. at 14-15. Farmers neither rejoins these arguments nor advances any logical argument—good, bad, or mediocre—for why the paid-or-incurred statute should apply outside its expressly limited scope. *Id.* Instead, Farmers just lectures the Court on the meaning of "actually paid and incurred"—a phrase peculiar to Section 41.0105—and notes that the supreme court, in *Haygood,* characterizes the policy underlying Section 41.0105. So? While no one in this case disputes what "actually paid and incurred" means, this phrase from an inapplicable statute is a red herring. Farmers gets no brownie points for attempting to apply it where it doesn't belong.

To claim that our arguments respecting Section 41.0105 are "off point," Farmers quotes from our second issue statement. But that issue statement clearly raises a different and relevant matter, concerning the district court's failure to acknowledge that the legislature immunized Beasley's DTPA claim from the reach of Chapter 41. The issue statement reads:

> Among his several claims, Beasley pleaded a DTPA cause of action alleging unfair claim-settlement practices. Disposing of the baby with the bathwater, the trial court dismissed Beasley's entire suit on the basis of Section 41.0105 of the Texas Civil Practice and Remedies Code. Yet both the DTPA and the Code say the Code's Chapter 41 does not govern DTPA claims. Did the trial court err in dismissing Beasley's DTPA claim?

The point—that the trial court applied an indiscriminate and overly broad analysis—stands.

Farmers's final point—an allegation about the result "[i]f Section 41.0105 had never been enacted," Brief at 22—also goes nowhere. The prior law permitted expense recoveries exceeding insurers' contractual discounts. Absent Section 41.0105, that law would have remained in effect, even for tort suits.

## Conclusion and Prayer

The trial court's order of dismissal should be reversed and the cause reinstated. Of course, Beasley also prays for whatever other relief he may be entitled to receive.

Respectfully submitted,

*/s/ Gregory D. Smith*
Gregory D. Smith

Gregory D. Smith
State Bar No. 18600600
Nolan Smith
State Bar No. 24075632
SMITH LEGAL, PLLC
110 N. College Ave., Suite 1120
Tyler, Texas 75702
Telephone: (903) 630-7118
Facsimile: (903) 609-3077
greg@smithlegaltx.com
nolan@smithlegaltx.com

Ronald S. Vickery
State Bar No. 20574250
VICKERY LAW FIRM
210 S. Broadway, Suite 230
Tyler, Texas 75702
Telephone: (903) 504-5490
Facsimile:  (903) 787-7540
ron@vickerylawfirm.com

W. Perry Zively, Jr.
State Bar No. 22290050
Chandler, Mathis & Zivley, P.C.
601 Sawyer St., Suite 600
Houston, Texas 77007
Telephone:   (713) 739-7722
Facsimile:    (713) 739-0922
pzivley@cmzlaw.net

L. Boyd Smith Jr.
State Bar No. 18638400
The Boyd Smith Law Firm, PLLC
601 Sawyer St., Suite 600
Houston, Texas 77007
Telephone:   (713) 343-8899
Facsimile:    (713) 343-9265
bsmith@boydsmithlaw.com

COUNSEL FOR APPELLANT

## Certificate of Service

The foregoing brief has been served via efileTexas.gov, on the persons listed below, who are counsel on appeal for Farmer Texas County Mutual Insurance Company, on this 24th day of January 2018.

> Thomas F. Loose
> Kurt M. Wolber
> LOCKE LORD LLP
> 2200 Ross Ave., Suite 2200
> Dallas, TX 75201
> Telephone: (214) 740-8000
> Facsimile:  (214) 740-8800

*/s/ Gregory D. Smith*
Gregory D. Smith

## Certificate of Compliance

1. This response complies with the type-volume limitation of TEX. R. APP. P. 9.4 because it contains 3754 words, excluding parts of the response exempted by TEX. R. APP. P. 9.4(i)(2)(B).

2. This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in the proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

Dated: January 24, 2018

*/s/ Gregory D. Smith*
Gregory D. Smith
