**VACATE, REVERSE and RENDER and Opinion Filed July 5, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00158-CV

**KELLY M. LIEBBE AND JONATHAN RUTE, Appellants**
**V.**
**STEPHEN COURTNEY, M.D. AND STEPHEN COURTNEY, M.D., P.A.,**
**Appellees**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-03470-2016**

### MEMORANDUM OPINION[1]
Before Justices Molberg, Pedersen, III, and Goldstein
Opinion by Justice Molberg

A jury returned a verdict against appellants Kelly Liebbe and Jonathan Rute

and in favor of appellees Stephen Courtney, M.D. (Dr. Courtney) and Stephen

Courtney, M.D., P.A. (Dr. Courtney's professional association) on multiple tort

claims appellees brought against appellants. The trial court then signed a final

judgment in favor of Dr. Courtney and his professional association and against

---

[1] *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."); *see also id.* 47.4 (stating, in part, "If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it.").

Liebbe and Rute on certain claims, awarding a total of about $4.5 million to Dr. Courtney and about $1.2 million to his professional association based on the percentages of responsibility the jury determined for Liebbe and Rute.[2]

Liebbe and Rute timely appealed. In nine issues, they assert error in connection with the final judgment and three sanctions orders[3] signed by the trial court.[4] Two of those orders—the two Liebbe appeals—also involved another party,

---

[2] The jury assessed Dr. Courtney's damages as $8,415,224.00, his professional association's damages as $2,482,550.00, and determined Liebbe and Rute's proportionate levels of responsibility to be twenty and thirty percent, respectively. The jury assigned the other fifty percent of responsibility to others. After Liebbe's and Rute's percentages were applied and prejudgment interest was added, the trial court's judgment ordered Liebbe to pay $1,805,395.31 to Dr. Courtney and $468,449.91 to his professional association and ordered Rute to pay $2,708,092.95 to Dr. Courtney and $702,764.87 to Dr. Courtney's professional association. The judgment also ordered Liebbe and Rute to pay post-judgment interest and court costs.

[3] Liebbe and Rute both assert error in connection with the final judgment. Liebbe also asserts error in connection with sanctions orders signed March 1, 2021, and November 30, 2021, and Rute also asserts error in connection with a sanctions order signed July 27, 2021.

[4] Liebbe asks us to resolve six questions:

1. Can minority shareholders in closely-held corporation recover damages from a third party for the diminished value of their shares without bringing a derivative suit on behalf of the corporation?
2. Can parties recover damages for conversion or misappropriation of trade secrets without first demonstrating their ownership of the alleged trade secrets?
3. Does a statutory cause of action under the Texas Uniform Trade Secrets Act preempt common-law claims for conversion and tortious interference?
4. Can parties recover damages without any evidence on one or more of the elements in a cause of action?
5. Can parties recover damages that were not proximately caused by an underlying tort?
6. Can a trial court sanction parties in the absence of (a) sanctionable conduct; (b) notice; or (c) any connection between the allegedly sanctionable conduct and the sanction itself?

Rute raises three issues (he referred to them as issues A, B, and C; we number them instead):

1. The trial court erred by imposing death-penalty sanctions against Mr. Rute.
2. [Appellees] failed to establish essential elements of each of their claims.
3. [Appellees] failed to prove damages.

Rute also joined in and partially adopted portions of Liebbe's brief, including her arguments regarding the absence of specific facts of appellants as the cause of appellees' damages. *See* TEX. R. APP. P. 9.7.

Cameron Carmody, M.D. (Dr. Carmody), who has made no appearance in this appeal.[5] Below, because we sustain Liebbe's fifth issue, as fully adopted by Rute,[6] and sustain, in part, Rute's second issue and Liebbe's sixth issue, we (1) reverse and vacate the trial court's March 1, 2021, and November 30, 2021 orders as to Liebbe; (2) reverse the final judgment and render judgment that Dr. Courtney and his professional association take nothing on their claims against Liebbe and Rute for conversion, tortious interference with contract, and violations of the Texas Uniform Trade Secrets Act ("TUTSA"),[7] and (3) reverse the final judgment and render judgment that Dr. Courtney take nothing on his conspiracy claim against Rute. In light of our disposition, we need not reach Rute's first or third issues or Liebbe's questions one through four.

## I. BACKGROUND

The facts and procedural history in this case are well-known to the parties, and detailing those items here would be both extraordinarily lengthy[8] and unnecessarily repetitive, particularly with regard to the March 1, 2021 sanctions order at issue in Liebbe's appeal. *See* TEX. R. APP. P. 47.4. In two earlier opinions,

---

[5] Dr. Carmody filed, with Dr. Courtney and his professional association, a joint motion to compel and motion for sanctions against Liebbe. Dr. Carmody was a defendant in the trial court at the time of that filing but was dismissed before trial. Liebbe lists Dr. Carmody as an appellee in this case on her docketing statement and appellate brief in our Court, but Dr. Carmody has made no appearance in this appeal.

[6] *See* TEX. R. APP. P. 9.7 ("Any party may join in or adopt by reference all or any part of a brief, petition, response, motion, or other document filed in an appellate court by another party in the same case.").

[7] *See* TEX. CIV. PRAC. & REM. CODE §§ 134A.001–.008.

[8] This litigation began in 2016, and the record is voluminous. The docket sheet alone is sixty-nine pages in length.

we described that order in detail and will not repeat that information a third time here.[9] Not discussed in our earlier two opinions, however, are the final judgment and the other two orders being appealed—a July 27, 2021 order, which Rute discusses in his first issue but we need not reach, and a November 30, 2021 order, which Liebbe appeals. We discuss both below as needed.

## II. DISCUSSION

### A. Appeal of Final Judgment

#### 1. Pertinent Background

The crux of this lawsuit is appellees' claim that Liebbe, Rute, and others "engaged in an unlawful conspiracy to obtain and use the [protected health information (PHI)] of patients treated by Dr. Courtney" and that "the unlawful use of the PHI has resulted in substantial financial and reputational harm" to appellees.

Among other claims, appellees asserted claims against Liebbe and Rute for conversion, misappropriation of trade secrets under TUTSA, and tortious interference with prospective business relations. Appellees also alleged Liebbe, Rute, and others engaged in a civil conspiracy, claiming they "were members of a combination of two or more persons whose objective was to accomplish an unlawful purpose or a lawful purpose by unlawful means, all of whom had a meeting of the minds on the objective or course of action [and] [o]ne or more of the members of the

---

[9] *See Frenkel v. Courtney*, No. 05-21-01114-CV, 2023 WL 3914549, at *1–5 (Tex. App.—Dallas June 9, 2023, pet. denied) (mem. op.); *In re Frenkel*, No. 05-21-00194-CV, 2021 WL 2943939, at *1–3 (Tex. App.—Dallas July 13, 2021, orig. proceeding) (mem. op.).

conspiracy committed unlawful, overt acts to further the object of the course of action," causing harm to appellees. In describing the harm caused by Liebbe's and Rute's acts of conversion, TUTSA violations, tortious interference with prospective business relations, and civil conspiracy, appellees claim they sustained "massive actual, special, and consequential damages, including lost profits."

Pertinent to this appeal are certain news stories published by a local Dallas-Fort Worth station, WFAA/Channel 8, and one of its investigative reporters, Brett Shipp. Appellees' pleading described those stories, in part, stating:

> In furtherance of their scheme, on May 22, 2017, Liebbe and/or Rute provided Brett Shipp ("Shipp") with inaccurate and deceptive information for inclusion in the first of two unfair, misleading, distorted, and defamatory stories that were aired by Channel 8, WFAA-Dallas ("WFAA") against Dr. Courtney. . . .

> Just a few months before WFAA aired Shipp's inaccurate and unbalanced stories, Dr. Courtney opened a multi-million dollar hospital in Richardson called Eminent Medical Center. The airing of Shipp's salacious and disparaging stories based on allegations involving Liebbe's clients and other patients who she unlawfully obtained from the PHI Notebook caused significant financial harm to Dr. Courtney through his ownership of Eminent Medical Center. Dr. Courtney's patient volume also dropped by almost half, all of which cost Dr. Courtney millions of dollars in monetary harm. But for unlawfully possessing the PHI, Liebbe never would have been in a position to cause or entice the airing of the WFAA story.

The case went to trial before a jury, and trial lasted four days. The two WFAA/Channel 8 stories were among the exhibits admitted into evidence. In an informal charge conference, appellees' counsel stated this about the first story:

> We wouldn't be here but for the Channel 8 story. I mean, that's why we are here. The – everything that led up to that Channel 8 story – I mean,

that Channel 8 story is the case. That's why we are here and that's – I mean, now we are – I will just repeat this for emphasis. That is the date of the injury, that's when the financial economic harm occurred.

On the claims against appellants, after the evidence was closed and the case was submitted to the jury, the jury answered as follows:[10]

- Conversion Claims: Appellees asserted conversion claims against both appellants, with the alleged property at issue consisting of confidential patient information. The jury answered "yes" in response to the submitted liability questions for both appellants (questions 1 and 2).[11]

- TUTSA Claims: Appellees asserted claims for misappropriation of trade secrets against both appellants. The jury answered "yes" in response to the submitted liability questions for both appellants (questions 4 and 5).[12]

- Tortious Interference Claims: Appellees asserted claims against both appellants for tortious interference with prospective patient relationships.

---

[10] Questions 1, 2, 4, 5, 6, and 7 were accompanied, in part, by this instruction from the trial court:

*The Court instructs you to answer "Yes" to Questions [1, 2, 4, 5, 6, 7] as to [Rute]. This instruction is a sanction against [Rute] for failing to comply with the Texas Rules of Civil Procedure during the litigation process and is NOT based on the merits of this case. This Court's finding is solely related to [Rute]. You are specifically instructed to not use this instruction as a circumstance against [Rute] or any other defendant as to the merits of this case or in answering any other question in this Charge.

The sanction referred to in that instruction relates to a July 27, 2021 order that Rute challenges in his first issue on appeal, but in light of our disposition on other matters, we need not reach that issue. Among other things, the order struck Rute's pleadings, including his answer and counterclaims, and stated appellees were entitled to include in the jury charge at trial a spoliation instruction against Rute. Consistent with that order, a spoliation instruction against Rute was included in the court's charge to the jury.

[11] The questions, without the related instructions, were: (1) "Did any of those named below convert [Dr. Courtney's] personal property?" and (2) "Did any of those named below convert [Dr. Courtney's professional association's] personal property?" In the related instruction in each question, "property" was followed by a parenthetical stating, "(the confidential patient information)." Liebbe and Rute, along with others, were listed under each question, and the jury answered "yes" to both appellees.

[12] The questions, without the related instructions, were: (4) "Did any of those named below misappropriate [Dr. Courtney's] trade secret?" and (5) "Did any of those named below misappropriate [Dr. Courtney's professional association's] trade secret?" Both questions were conditioned on a "yes" answer to question three, which asked, "Did either [Dr. Courtney or his professional association] own a trade secret in the information about patients they treated, including a list of such patients, their contact information, and outcomes?" The jury answered question three with a "yes" to both appellees.

–6–

The jury answered "yes" in response to the submitted liability questions for both appellants (questions 6 and 7).[13]

- Allegation of Conspiracy: Appellees also alleged appellants and others engaged in a conspiracy against them, and the court submitted questions to the jury to determine whether they did so (questions 10 and 11). The only "yes" answer pertinent to this appeal indicates the jury believed Rute engaged in a conspiracy against Dr. Courtney.[14]

In question 12, the jury was asked, "What sum of money, if any, paid now in cash, would fairly and reasonably compensate [Dr. Courtney] for his damages, if any, from such conduct in Question 1, Question 4, or Question 6?" The jury answered as follows:

1. Lost profits sustained in the past by Plaintiff Stephen Courtney, M.D. (other than his percentage ownership of Eminent Medical Center Operating)

    _____0_____

2. Lost profits sustained in the past by Plaintiff Stephen Courtney, M.D. of his percentage ownership in Eminent Medical Center Operating

    $ 8,415,224.00

In question 13, the jury was asked, "What sum of money, if any, paid now in cash, would fairly and reasonably compensate [Dr. Courtney's professional

---

[13] The questions, without the related instructions, were: (6) "Did any of those named below intentionally interfere with [Dr. Courtney's] prospective business relationships with future prospective patients through an independently tortious or unlawful act?" and (7) "Did any of those named below intentionally interfere with [Dr. Courtney's professional association's] prospective business relationships with future prospective patients through an independently tortious or unlawful act?"

[14] The questions, without the related instructions, were: (10) "Were any of those named below part of a conspiracy that damaged [Dr. Courtney]?" and (11) "Were any of those named below part of a conspiracy that damaged [Dr. Courtney's professional association]?" The jury answered question ten with a "no" as to Liebbe and a "yes" as to Rute and answered question eleven with a "no" as to both Liebbe and Rute.

association] for [its] damages, if any, from such conduct in Question 2, Question 5, or Question 7?"  The jury answered as follows:

1. Lost profits sustained in the past by Plaintiff Stephen Courtney, M.D., P.A. for lost professional fees.

$2,482,550.00

On November 30, 2021, the trial court entered the final judgment in favor of Dr. Courtney and his professional association and against Liebbe and Rute.  After applying the percentages of proportionate responsibility assessed by the jury[15] and adding prejudgment interest, the trial court's judgment ordered Liebbe to pay $1,805,395.31 to Dr. Courtney and $468,449.91 to his professional association and ordered Rute to pay $2,708,092.95 to Dr. Courtney and $702,764.87 to Dr. Courtney's professional association.  The judgment also ordered Liebbe and Rute to pay post-judgment interest and court costs.

## 2.  Legal Sufficiency Challenge on Causation

In Liebbe's fifth issue, and as fully adopted by Rute,[16] appellants argue, in essence, that we should reverse the judgment and render a take-nothing judgment on appellees' various tort claims because appellees did not present legally sufficient

---

[15] In questions 8 and 9, the trial court submitted proportionate responsibility questions related to the jury's "yes" answers to questions 1, 2, 4, 5, 6, and 7.  The total for all persons listed in each question was one hundred percent, but as is pertinent to this appeal, the jury answered both questions by assessing Liebbe's responsibility at twenty percent and Rute's responsibility at thirty percent.

[16] *See* TEX. R. APP. P. 9.7.

evidence to show a causal link between appellants' tortious conduct and the damages awarded.

Evidence is legally insufficient to support a jury finding when "(1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact." *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether there is no evidence to support a jury's finding, all the record evidence must be considered in the light most favorable to the party in whose favor the verdict has been rendered. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

As reflected above, the tortious acts forming the basis of the jury's answers to the damages questions (answers to questions 11 and 12) consist of converting confidential patient information (answers to questions 1 and 2), misappropriating appellees' trade secrets (answers to questions 4 and 5), and (3) intentionally interfering with appellees' prospective business relationships with prospective patients (answers to questions 6 and 7).

Viewing the evidence as we must, and without considering whether appellees presented sufficient proof to support the other challenged elements of their tort claims or whether the trial court erred in allowing the testimony of appellees' damages expert, we conclude the trial court erred in entering judgment for appellees on appellees' claims for conversion, TUTSA violations, and tortious interference with prospective business relations because there was no evidence, or, at a minimum, no more than a scintilla of evidence, of any causal link between Liebbe's and Rute's tortious conduct and the damages awarded on those claims. In short, we conclude there was legally insufficient evidence that Liebbe's or Rute's tortious conduct caused the lost profits the jury assessed at trial, particularly when appellees themselves identified the WFAA/Channel 8 stories as the root of the harm. In our view, the evidence simply did not enable reasonable and fair-minded people to reach the verdict under review because the evidence failed to establish a sufficient causal connection between the lost profits the jury awarded as damages and any alleged tortious conduct by appellants. *See City of Keller*, 168 S.W.3d at 827 (outlining applicable standards); *see also Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 54–55 (Tex. 2021) (affirming the dismissal, under the Texas Citizens Participation Act, of a claimant's claims for business disparagement and tortious interference with prospective business relations; court agreed the evidence failed to establish a sufficient causal connection between the disparaging statements alleged

–10–

to have been made by defendants and the lost bookings the claimants were claiming as damages).[17]

We sustain Liebbe's fifth issue, which Rute adopted. *See* TEX. R. APP. P. 9.7.

### 3. Jury's Conspiracy Finding Against Rute

Essentially, in his second issue, Rute challenges, in part, the legal sufficiency of the evidence to support the jury's finding in response to question ten that he engaged in a conspiracy against Dr. Courtney. More specifically, in the fifth subpart of his second issue, Rute argues that because a plaintiff must prove an underlying tort in order to establish the liability of a conspirator, *see Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019), he "is not liable as a conspirator" because appellees "have failed to prove any of the foregoing torts."

---

[17] "A fundamental rule is that '[t]o recover damages, the burden is on the plaintiff to produce evidence from which the jury may reasonably infer that the damages claimed resulted from the defendant's conduct.'" *Haygood v. De Escabedo*, 356 S.W.3d 390, 399 (Tex. 2011) (quoting *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 838 (Tex.1997)). We agree with Liebbe's view, which Rute adopted, that to find appellants responsible for the lost profits as awarded by the jury, the jurors had to stack assumption upon assumption, with no evidence or no more than a scintilla of evidence to support them at any level. This can be visualized as follows:

> Starting premise: appellees engaged in tortious acts stemming from their acquisition of PHI (specifically, by converting confidential patient information, misappropriating it, and intentionally interfering with prospective relations with future patients), which

> --» caused the WFAA/Channel 8 stories, which

>> --» then caused patients who were going to have surgery by Dr. Courtney to cancel due to viewing the stories, which

>>> --» then caused Dr. Courtney to perform fewer surgeries, and which

>>>> --» then caused appellees to incur lost profits as awarded by the jury.

Here, we conclude there is no more than a scintilla of evidence that the lost profits the jury awarded Dr. Courtney and his professional association were caused by Liebbe's or Rute's tortious conduct.

"Civil conspiracy requires an underlying tort that has caused damages." *Id.* (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)); *see W. Fork Advisors, LLC v. SunGuard Consulting Serv., LLC*, 437 S.W.3d 917, 920 (Tex. App.—Dallas 2014, pet. denied) ("There are a number of ways the viability of a conspiracy claim can be defeated by the claimant's failure to establish an underlying tort. . . . Regardless of the reason for the failure of the underlying tort, there can be no independent liability for civil conspiracy.") (citations omitted).

Having concluded that appellees failed to bring forth more than a scintilla of probative evidence of causation to support their independent tort claims for damages, the jury's conspiracy finding against Rute in the jury's answer to question ten cannot stand. Based on the record before us, there is no underlying tort on which to base a conspiracy finding. *See id.* We sustain Rute's second issue to this extent.

## B.    Orders Appealed by Liebbe

In her sixth issue, Liebbe asks, in part, "Can a trial court sanction parties in the absence of . . . sanctionable conduct?" Generally, Liebbe argues the trial court erred by sanctioning her in its March 1, 2021 order and by requiring her to pay certain attorneys' fees to appellees and Dr. Carmody in its November 30, 2021 order—actions purportedly taken under the trial court's inherent power and Texas Rule of Civil Procedure 215.

### 1. Standard of Review

We review a trial court's sanctions order for abuse of discretion, which occurs when a trial court acts without reference to guiding rules and principles such that the ruling is arbitrary or unreasonable. *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717 (Tex. 2020). We view conflicting evidence favorably to the trial court's decision but are not bound by a trial court's fact findings or conclusions of law and must review the entire record independently to determine whether the trial court abused its discretion. *Id.* A decision lacking factual support is arbitrary and unreasonable and must be set aside. *Id.*

### 2. Pertinent Portions of the Orders at Issue

The March 1, 2021 order is ten pages in length, and much of it is single spaced. We need not detail the entirety of the order's text here but do note that in it, the trial court included findings similar to those we addressed in our prior opinions involving Liebbe's counsel in the trial court, Scott Frenkel. *See Frenkel v. Courtney*, 2023 WL 3914549, at *1–5; *In re Frenkel*, 2021 WL 2943939, at *1–3. In this case, as in *Frenkel*, the trial court made findings regarding representations Liebbe and Frenkel made to the trial court regarding whether certain documents were actual findings made or adopted by the Texas Medical Board against Dr. Courtney.

As to Liebbe, the March 1, 2021 order stated, in pertinent part:

> After having considered the Joint Motion for Sanctions filed by [appellees] and [Dr. Carmody] against [Liebbe] and her counsel, Scott Frenkel ("Frenkel"), and the evidence presented and arguments of counsel made during the hearing held on October 6, 2020, the [c]ourt

–13–

finds that the motion should be granted based on the following specific findings:

. . . .

- Liebbe's representations that the Documents at Issue were actual findings made or adopted by the Texas Medical Board against Dr. Courtney, as she set forth in her Response and Sur-Reply to the Joint Motion to Compel, were false.

- Liebbe's sworn testimony given during the October 6, 2020 hearing . . . is not credible . . . .

- Before filing her Response and Sur-Reply to the Joint Motion to Compel, Liebbe knew, or at the very least should have known, the Documents at Issue were not actual findings made or adopted by the Texas Medical Board against Dr. Courtney.

. . . .

Based on the foregoing findings and any other findings specifically made by the Court during the hearing held on October 6, 2020, the Court grants the Joint Motion for Sanctions to the extent set forth below:

Therefore, the [c]ourt ORDERS that [Liebbe] be, and is hereby, required to pay, as a sanction under Rule 215 of the Texas Rules of Civil Procedure and the inherent power of the Court, [Dr. Courtney and Dr. Carmody] for [their] reasonable and necessary attorneys' fees and costs incurred in connection with the Joint Motion to Compel. . . . The [c]ourt will rule on the amount of reasonable and necessary attorneys' fees claimed by [Dr. Courtney and Dr. Carmody] in a separate order. [Liebbe] shall then have thirty calendar days to pay the amount of reasonable and necessary attorneys' fees from the date the [c]ourt makes its ruling.

The [c]ourt further ORDERS that [Liebbe] be, and is hereby, required to pay $5,000, as a further sanction, to the Texas Lawyers Assistance Program, which payment shall be due and payable by [Liebbe] on the same date that her sanctions payment to Dr. Courtney's counsel is due to be paid.

The Court further ORDERS that, . . . [Liebbe] and her counsel . . . be, and are hereby, required to complete an additional 10 hours of CLE, on the specific topic of legal ethics within 24 months of the signing of this Order.

Later, after trial concluded, and on the same day the final judgment was signed, the trial court stated, in pertinent part, in the November 30, 2021 order:

Having considered [appellees'] and Dr. Carmody's evidence setting forth their respective reasonable and necessary attorneys' fees and costs, . . . and the applicable authorities, the Court finds Liebbe should pay [appellees] and Dr. Carmody as follows consistent with Rule 215 of the Texas Rules of Civil Procedure and/ or the inherent power of this Court:

Therefore, the [c]ourt ORDERS Liebbe shall pay the sum of $16,500 in reasonable and necessary fees and costs to [appellees] within 120 calendar days of this Order . . . ;

. . . .

The [c]ourt further ORDERS Liebbe shall pay the sum of $16,500 in reasonable and necessary fees and costs to Dr. Carmody within 120 calendar days of this Order . . . .

In the November 30, 2021 order, the trial court also ordered Liebbe to pay certain sums to appellees and Dr. Carmody for conditional appellate attorneys' fees "if the [c]ourt's March 1, 2021 order or [the November 30, 2021] [o]rder are appealed unsuccessfully by Liebbe and/or her attorneys."

### 3. Order to Pay Third Party and Take Added CLE Hours

In *Frenkel*, 2023 WL 3914549, we examined the same March 1, 2021 order at issue here, but we did so in an appeal brought by Frenkel, Liebbe's counsel in the trial court, who was also sanctioned in the March 1, 2021 order.

Although the amounts differed, the trial court's March 1, 2021 order required Frenkel and Liebbe to make payments of certain amounts to a third party, the Texas Lawyers Assistance Program (TLAP), and to take ten additional hours of continuing legal education (CLE) on the specific topic of legal ethics in a certain time frame.

In Frenkel's appeal of that order, Frenkel argued the trial court had no basis to impose sanctions under rule 215, had no evidence to impose sanctions under its inherent power, and neither the trial court nor the appellees in that case provided written notice that sanctions would be sought under the trial court's inherent power. *Id.*, at \*5. The appellees in *Frenkel*—the same appellees here—argued the sanctions in *Frenkel* were proper under the trial court's inherent power but conceded the sanctions imposed there are not in rule 215's enumerated list of sanctions. *Id.*, at \*6.

Here, Liebbe and appellees make the same types of arguments made in *Frenkel*, and appellees again concede rule 215 does not apply.[18] Similar to our conclusion regarding the March 1, 2021 order in *Frenkel*, here, we again decide rule 215 cannot form the basis for the portions of that order that require Liebbe to make a payment to TLAP and to take additional hours of CLE on the specific topic of legal ethics, as those sanctions do not fall within the relevant paragraphs of rule 215.2. *See id*. (stating a fine payable to TLAP and additional hours of CLE do not fall within the relevant paragraphs of Rule 215.2 and "[r]ule 215 cannot form the basis for

---

[18] In their appellate brief, appellees state, in pertinent part, "[Appellees] have previously acknowledged the fact that the sanctions the trial court imposed against Liebbe are not included in Rule 215's enumerated list of sanctions. . . . Thus, Rule 215 does not apply in this situation and requires no further discussion."

affirming the trial court's sanctions order."); *see also* TEX. R. CIV. P. 215.2(b).  We sustain Liebbe's sixth issue to this extent.

Next, we consider whether the trial court's inherent power provides a proper basis for ordering Liebbe to pay $5,000 to TLAP and to take additional CLE or whether, as Liebbe argues, that, too, constituted an abuse of discretion.  In *Frenkel*, 2023 WL 3914549, at *6, we explained:

> Courts possess inherent powers that aid the exercise of their jurisdiction, facilitate the administration of justice, and preserve the independence and integrity of the judicial system. *Brewer*, 601 S.W.3d at 718.  A court's inherent authority includes the "power to discipline an attorney's behavior." *Id*.  Accordingly, courts are "empowered to punish an attorney's behavior even when the offensive conduct is not explicitly prohibited by statute, rule, or other authority." *Id*.
>
> However, a court's inherent authority to sanction is limited by due process; sanctions must be just and not excessive and must be exercised with restraint and great caution. *Id*.  "To that end, invocation of the court's inherent power to sanction necessitates a finding of bad faith." *Id*.  Bad faith is not just intentional conduct but intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts. *Id*. at 718-19.  "Bad faith" includes "conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." *Id*. at 719.  Errors in judgment, lack of diligence, unreasonableness, negligence, or even gross negligence—without more—do not equate to bad faith. *Id*.  Improper motive, not perfection, is the touchstone. *Id*.  Bad faith can be established with direct or circumstantial evidence, but absent direct evidence, the record must reasonably give rise to an inference of intent or willfulness. *Id*.

As we concluded regarding her counsel in *Frenkel*, *see id*., at *7, from the record before us, we cannot conclude the evidence gives rise to an inference of intent or willfulness or indicates improper motive on Liebbe's part.  *See Brewer*, 601 S.W.3d at 719.  As a result, we conclude the trial court abused its discretion by

–17–

assessing sanctions against Liebbe under its inherent authority without finding bad faith, both with regard to the order to pay TLAP and take additional CLE hours, as well as with regard to the order to pay attorneys' fees, a matter we address next. We sustain Liebbe's sixth issue to this extent as well.

### 4. Attorneys' Fees

Given our conclusion in the prior paragraph, as to attorneys' fees, we are left with only a single question: did the trial court abuse its discretion by ordering Liebbe to pay attorneys' fees to appellees and Dr. Carmody under Texas Rule of Civil Procedure 215?

In addition to requiring Liebbe to pay $5,000 to TLAP and to take ten additional hours of CLE on the topic of legal ethics, the March 1, 2021 order also required Liebbe to pay Dr. Courtney and Dr. Carmody their reasonable and necessary attorneys' fees and costs incurred in connection with their joint motion to compel, and according to the order's text, the trial court did so under rule 215 and the trial court's inherent power. That order stated the trial court would rule on the amount of reasonable and necessary attorneys' fees claimed by Dr. Courtney and Dr. Carmody in a separate order.

In the November 30, 2021 order, the trial court ordered Liebbe, "consistent with [rule 215] and/or the [trial court's] inherent power," to pay $16,500 in reasonable and necessary fees and costs to appellees and to pay $16,500 in reasonable and necessary fees and costs to Dr. Carmody, with both payments to be

made within 120 calendar days of that order. The order also required Liebbe to pay appellees and Dr. Carmody certain sums for their conditional appellate attorneys' fees if the March 1, 2021 order or the November 30, 2021 order are unsuccessfully appealed by Liebbe or her attorneys.[19] The order indicated in making the ruling, the trial court considered various declarations and objections filed by the parties, including but not limited to declarations and amended declarations filed by counsel for Dr. Courtney, his professional association, and Dr. Carmody, as well as objections filed by Liebbe to those materials.

On appeal, Liebbe argues the trial court abused its discretion by requiring her in those orders to pay attorneys' fees to appellees and Dr. Carmody. She argues, in part, that she engaged in no sanctionable conduct; the sanctions orders do not find, allege, or address discovery abuse under rule 215.3; and there is no evidence of bad faith, which is required to impose sanctions based on a court's inherent power.

We already addressed the last argument in the prior section. Because we cannot conclude the evidence gives rise to an inference of intent or willfulness or indicates improper motive on Liebbe's part, *see Brewer*, 601 S.W.3d at 719, we sustained Liebbe's sixth issue to the extent we concluded the trial court abused its

[19] The amounts awarded to appellees and Dr. Carmody for conditional appellate attorneys' fees differed, but the order stated the amounts awarded were equitable and just and represented "anticipated attorneys' fees" by appellees and Dr. Carmody that may be incurred in defending an appeal, either in this Court or in the petition-for-review, merits-briefing, and oral-argument-and-completion-of-proceedings stages of an appeal at the Texas Supreme Court.

discretion by assessing sanctions against Liebbe under its inherent authority, including by ordering her to pay attorneys' fees to appellees and Dr. Carmody.

As to rule 215 as a basis for the orders requiring Liebbe to pay attorneys' fees to appellees and Dr. Carmody, as we have noted, appellees concede "[r]ule 215 does not apply." We agree rule 215 does not apply here, but for a reason different than the one discussed above regarding the order for Liebbe to pay TLAP and to take additional CLE hours. As we stated, as to those requirements, rule 215 does not apply because those sanctions do not fall within the relevant paragraphs of rule 215.2. *See Frenkel*, 2023 WL 3914549, at *6; *see also* TEX. R. CIV. P. 215.2(b).

An award of attorneys' fees, on the other hand, falls within the relevant paragraphs of rule 215.2 and thus may be ordered as a possible sanction under rule 215. *See* TEX. R. CIV. P. 215.2(b)(8) (stating, in regard to the failures described in that rule, the trial court may make such orders as are just, including an order "to pay . . . the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."). However, in this case, based on the record before us, to the extent the trial court based its orders for Liebbe to pay attorneys' fees on rule 215, we conclude the trial court abused its discretion, as we find no indication in the record that such orders resulted from any of the sanctionable acts covered by rule 215. *See* TEX. R. CIV. P. 215.1–215.6. We sustain Liebbe's sixth issue to this extent as well; as appellees concede, rule 215 does not apply.

## III. Conclusion

Because we sustain Liebbe's fifth issue, as fully adopted by Rute, and sustain, in part, Rute's second issue and Liebbe's sixth issue, we (1) reverse and vacate the trial court's March 1, 2021, and November 30, 2021 orders as to Liebbe; (2) reverse the final judgment and render judgment that Dr. Courtney and his professional association take nothing on their claims against Liebbe and Rute for conversion, tortious interference with contract, and violations of the Texas Uniform Trade Secrets Act ("TUTSA"),[20] and (3) reverse the final judgment and render judgment that Dr. Courtney take nothing on his conspiracy claim against Rute.

/Ken Molberg/
KEN MOLBERG
JUSTICE

220158F.P05

---

[20] *See* TEX. CIV. PRAC. & REM. CODE §§ 134A.001–.008.



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

KELLY M. LIEBBE AND
JONATHAN RUTE, Appellants


No. 05-22-00158-CV      V.


STEPHEN COURTNEY, M.D. AND
STEPHEN COURTNEY, M.D., P.A.,
Appellees

On Appeal from the 296th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 296-03470-2016.
Opinion delivered by Justice Molberg.
Justices Pedersen, III and Goldstein
participating.

In accordance with this Court's opinion of this date, we **REVERSE** and **VACATE** the trial court's March 1, 2021 and November 30, 2021 orders as to appellant Kelly Liebbe and **REVERSE** the judgment of the trial court and **RENDER** judgment that:

(1) Stephen Courtney M.D. and Stephen Courtney M.D., P.A. take nothing on their claims against Kelly Liebbe and Jonathan Rute for conversion, tortious interference with contract, and violations of the Texas Uniform Trade Secrets Act; and

(2) Stephen Courtney M.D. take nothing on his conspiracy claim against Jonathan Rute.

It is **ORDERED** that appellants KELLY M. LIEBBE AND JONATHAN RUTE recover their costs of this appeal from appellees STEPHEN COURTNEY, M.D. AND STEPHEN COURTNEY, M.D., P.A.


Judgment entered this 5th day of July 2024.